COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Clements
Argued at Chesapeake, Virginia


WILFRED DECOURCEY WILSON, SR.
                                                        OPINION BY
v.        Record No. 1113-04-1                 JUDGE ROBERT J. HUMPHREYS
                                                        JULY 12, 2005
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                           Edward L. Hubbard, Judge

            Charles E. Haden for appellant.

            Virginia B. Theisen, Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General, on brief), for appellee.


       Appellant Wilfred Decourcey Wilson, Sr., ("Wilson") appeals his convictions, following

a bench trial, for attempted rape, in violation of Code § 18.2-67.5(A), attempted forcible sodomy,

in violation of Code § 18.2-67.5(A), aggravated sexual battery, in violation of Code § 18.2-67.3,

sexual battery, in violation of Code § 18.2-67.4, and indecent exposure, in violation of Code

§ 18.2-387.  On appeal, Wilson challenges the sufficiency of the evidence to support his

convictions, also contending that the trial court erroneously admitted a letter that the victim

wrote to her grandmother because the victim's letter did not qualify as a "recent complaint"

within the meaning of Code § 19.2-268.2.  For the reasons that follow, we disagree and affirm

his convictions.  However, we remand this case to the circuit court for the sole purpose of

correcting an error reflected in the conviction and sentencing orders.[1]

_____

       [1] The record establishes that Wilson was indicted and tried for *attempted* forcible
sodomy, pursuant to Code § 18.2-67.5(A), and the trial court found Wilson guilty of the crimes
"as charged."  However, the conviction and sentencing orders erroneously indicate that Wilson
was convicted of forcible sodomy, rather than attempted forcible sodomy.  Attempted forcible

## I. BACKGROUND

In accord with our usual standard of review, we view the evidence and all reasonable inferences flowing from the evidence in the light most favorable to the Commonwealth, the party prevailing below. Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003); Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002). So viewed, the evidence in this case establishes the following.

### A.

In February 2000, Wilson moved into a home already occupied by his wife, son, stepson, and twelve-year-old daughter. All of the children slept in the same room. Wilson's daughter slept in the top bunk of a set of bunk beds, and her younger brother slept in the bottom bunk. Wilson's stepson slept in a separate bed in the same room. Wilson and his wife, the daughter's stepmother, slept together in a different room.

In April 2000, Wilson began coming into the children's bedroom late at night, at around "two or three o'clock in the morning." He would climb the ladder to the top bunk and touch his daughter's breasts, first over her clothes, and then under them. While he was fondling his daughter, Wilson would place his hand over her mouth and tell her to "be quiet." When the daughter began to cry, Wilson would tell her that she was "no fun." After this happened a few times, Wilson also began touching his daughter's vagina with his fingers and mouth. He never placed his finger inside of her vagina, although he would on occasion touch her labia. This

---

sodomy, a Class 4 felony, carries a maximum sentence of ten years in prison. See Code § 18.2-10(d). Wilson, however, was sentenced to fifteen years in prison. Because Wilson's sentence exceeds the maximum permissible sentence for the crime with which he was charged, we remand this case to the circuit court for the limited purpose of correcting the conviction order and modifying Wilson's sentence accordingly.

happened "a lot of times," although "two or three weeks maybe" would pass between the incidents of abuse.

In 2001, the bunk beds broke while Wilson was trying to take them apart. The daughter then began sleeping on a sleeper sofa in the living room. After the change in sleeping arrangements, the incidents of abuse became more frequent, and the extent of the abuse also increased. Wilson would pin his daughter's arms above her head with one hand, remove her underwear with the other hand, and then "give [her] oral sex and touch [her] with his fingers down in [her] vaginal area." Wilson told her not to scream or he would hit her. This would happen at "random" intervals, but sometimes as often as two to five times per week.

On at least two occasions, Wilson also exposed himself to his daughter by removing his towel in front of her and laughing. The incidents of exposure occurred during the daytime while the daughter and Wilson were alone in the house.

The abuse continued until May of 2003. The last incident of abuse occurred when Wilson attempted to have vaginal intercourse with his daughter. On that evening, Wilson came into the living room while the daughter was asleep. He restrained her arms, told her to be quiet, and took off her clothes. At that point, Wilson was "aggressive, like he was . . . trying to attack [her]." He put his hand over her mouth and positioned his penis on the "outside part" of her vagina. When Wilson's penis touched the outside of her vagina, his daughter "started squirming" and then "bit his finger." Wilson "jumped up" and ran out of the room. At the time, the daughter was fifteen years old.

Throughout this time period, Wilson periodically apologized to his daughter and promised to stop the abuse. He also gave her an extra allowance so that she would not tell anyone what he was doing to her.

During each of the years that the abuse occurred, the daughter traveled to New York to spend her summer vacation with her paternal grandmother. According to the daughter, at one point during the summer of 2001, her stepbrother told her stepmother that he thought Wilson had been "messing" with his daughter. The stepmother then telephoned Wilson's daughter and asked if Wilson had been touching her. The daughter said that this was true, and her stepmother then told the daughter not to tell her grandmother about the abuse.

In the summer of 2003, the grandmother noticed that, on some evenings, the daughter would awaken in the night, crying, "No, no, no, no." "She would fight." The grandmother asked her why she was upset, and the daughter responded that she was "all stressed out." The daughter became increasingly agitated as the time neared for her to return to Virginia, and the grandmother told the daughter that she needed to tell her what was wrong. When the daughter would not say anything, her grandmother told her "to write a letter to her about how [she] was feeling." A few days later, the daughter wrote her grandmother a letter, explaining that Wilson was molesting her by "fondling, [] kissing her, [] sucking her breasts, and other things." The daughter gave the letter to her grandmother on August 31, 2003.

Wilson was arrested and charged with sexual battery and indecent exposure. On January 12, 2004, a grand jury indicted Wilson on five additional charges, specifically, one count of attempted rape, three counts of aggravated sexual battery, and one count of attempted forcible sodomy.

B.

At Wilson's bench trial, conducted on February 10, 2004, the Commonwealth moved to admit the letter the daughter gave to the grandmother, contending that the letter was admissible under the "recent complaint hearsay exception." Wilson objected, arguing that the letter "can't qualify as a first outcry," because "[t]he first outcry was two years before." The Commonwealth

responded that the letter was admissible because "[i]t's the first time she approached an adult about what happened." The trial court overruled the objection, reasoning that, although the daughter had "told her [step]mother about the touching," the letter was admissible under Code § 19.2-268.2 to prove "the nature of the complaint but not the details of the complaint."

During the trial, the daughter described the various incidents of abuse, testifying that her father touched her "a lot of times." She also testified that, initially, she did not fight back because she was afraid of her father, but that she finally began to fight back because she could not "take it" any longer. The daughter said that she was afraid of her father because he began hitting her and her brother shortly after he moved back into the family residence in 2000. The daughter said that she did not report the abuse to her brother, grandmother, or school counselor because she was "embarrassed and ashamed." She testified that she finally decided to tell her grandmother about the abuse because she believed her grandmother would understand.

The brother and stepbrother confirmed that Wilson's daughter began sleeping in the living room after the bunk beds broke. Before she moved out of the bedroom, neither had observed Wilson coming into the room late at night, but each boy also admitted to being a "heavy sleeper." The brother confirmed that Wilson began to "beat" them "a month or two" after he returned to the family residence, and he also testified that the daughter often "had more money" from her allowance than he did.

The stepbrother denied having told his mother that he "suspected anything was going on between Mr. Wilson and [his daughter]." The stepmother similarly denied ever having a phone conversation with Wilson's daughter about the abuse. She also testified that it would have been impossible for Wilson to sneak out of their bedroom and enter the children's bedroom without her noticing.

Wilson, testifying on his own behalf, stated that he never "touch[ed] [his daughter] or [had] any contact with her in any way sexually at all." Wilson admitted that he had struck his daughter in the past, but he testified that he only hit his daughter for disciplinary reasons "[w]hen [her] grades weren't up to par." Wilson also testified that his daughter "was constantly lying and doing things that [weren't] . . . normal," such as forging his name to a check that she used to pay for a school field trip. Wilson explained that he only gave his daughter additional money for her allowance if she had plans to go out to dinner with her brother on a Friday night. Wilson admitted that he has two prior felony convictions, but he denied having two misdemeanor convictions for fraud.

The trial court found Wilson guilty of all the felony offenses "as charged in the indictments," also finding him guilty of the misdemeanor charges of sexual battery and indecent exposure. The court observed that "these type[s] of charges" are "insidious" and "seldom ever done in the open." Thus, the court noted that

> What it boils down to essentially is there is corroboration, but it boils down to credibility, and the victim in this case, complaining witness in this case, gave an excellent account of her abilities to observe and remember and communicate what had occurred and [vis-à-vis] the other witnesses I resolve the credibility issue in her favor.

The trial court sentenced Wilson to thirty years for attempted rape, with twenty-five years suspended, fifteen years for each of the three counts of aggravated sexual battery, with ten years of each count suspended, fifteen years for forcible sodomy, with ten years suspended,[2] twelve months for misdemeanor sexual battery, all suspended, and twelve months for misdemeanor indecent exposure, all suspended. The trial court set Wilson's misdemeanor sentences to run

---

[2] See note 1, supra.

concurrently with his felony sentences, resulting in a total active sentence of twenty-five years in prison.  Wilson appeals.

## II.  ANALYSIS

On appeal, Wilson contends that the trial court erred in two respects.  First, Wilson argues that the trial court abused its discretion when it admitted the letter written by his daughter into evidence.  Second, Wilson argues that the evidence was insufficient to support his convictions, contending that his daughter's uncorroborated testimony was inherently incredible.  For the reasons that follow, we disagree.

### A.  Whether the Trial Court Erred in Admitting the Letter Into Evidence

A ruling with respect to the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion.  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  Here, Wilson argues that the trial court abused its discretion in admitting into evidence the letter from his daughter to her grandmother, reasoning that the letter was inadmissible hearsay that did not qualify as a "recent complaint" within the meaning of Code § 19.2-268.2.

A complaint made by a victim of sexual assault "has long been considered an expected and natural expression of the victim's feelings in response to the offense."  Lindsey v. Commonwealth, 22 Va. App. 11, 14, 467 S.E.2d 824, 826 (1996).  Such a complaint "is a relevant circumstance in determining the complainant's credibility, on the theory that the failure to bring a complaint raises suspicion and doubt about the trust of the report."  Id.  Accordingly, "'under a rule unique to [sexual assault] trials, evidence of an out-of-court complaint by a victim is admissible, not as independent evidence of the offense, but as corroboration.'"  Id. (quoting McManus v. Commonwealth, 16 Va. App. 310, 312, 429 S.E.2d 475, 475-76 (1993)); see also Mitchell v. Commonwealth, 25 Va. App. 81, 85-86, 486 S.E.2d 551, 553 (1997) ("Evidence of the victim's out-of-court complaint is not admissible as independent evidence of the offense. . . .

- 7 -

However, it is admissible to corroborate the victim's testimony and other independent evidence of the offense."); Terry v. Commonwealth, 24 Va. App. 627, 634-35, 484 S.E.2d 614, 617-18 (1997) (noting that evidence of a victim's complaint is admissible "to corroborate the complaining witness' testimony and to rebut the inference of recent fabrication that is raised by a victim's silence"); Woodard v. Commonwealth, 19 Va. App. 24, 27-28, 448 S.E.2d 328, 330-31 (1994) (noting that the function of "recent complaint" evidence is "to add weight and credibility to the direct evidence of the crime, including, but not limited to, the victim's testimony"). Thus, the fact that the victim made a complaint is admissible, but any details of the alleged incident described in that complaint remain inadmissible. Lindsey, 22 Va. App. at 15, 467 S.E.2d at 826; see also Cartera v. Commonwealth, 219 Va. 516, 518, 248 S.E.2d 784, 786 (1978); Woodard, 19 Va. App. at 27, 448 S.E.2d at 330.

Virginia's "recent complaint" exception, which is related to the common law "hue and cry" rule,[3] has been codified as Code § 19.2-268.2, which provides as follows:

> In any prosecution for criminal sexual assault . . . the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness.

Under this "modern rule," the "only time requirement is that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense." Woodard, 19 Va. App. at 27, 448 S.E.2d at 330 (internal quotations omitted); see also Brown v. Commonwealth, 37 Va. App. 169, 172-73, 554 S.E.2d 711, 713 (2001). Also, "[t]he initial determination of timeliness under the recent complaint rule is committed to the sound discretion

---

[3] According to the original "hue and cry" rule, "a prosecutrix was required to prove a timely complaint of an alleged rape in order to corroborate her claim that the assault was against her will." Woodard, 19 Va. App. at 27, 448 S.E.2d at 330. This rule "is no longer operative" in Virginia. Id.

of the trial court, and thereafter, timeliness is a matter for the trier of fact to consider in weighing the evidence." Woodard, 19 Va. App. at 27, 448 S.E.2d at 330; see also Terry, 24 Va. App. at 634-35, 484 S.E.2d at 617-18.[4]

Here, the time gap between the onset of the abuse and the date the letter was written is not "unexplained," nor is it "inconsistent with the occurrence of the offense." The abuse began in April 2000, when the daughter was twelve years old, and continued periodically until May 2003. During that time period, Wilson continuously threatened his daughter with physical harm and repeatedly instructed her not to tell anyone. The daughter explained that she delayed reporting the incidents because she was afraid of her father, who had admittedly hit her in the past, and because she was embarrassed and ashamed to admit that her father was touching her inappropriately.[5] In light of the daughter's impressionable age, the ongoing nature of the abuse, and the family relationship between the parties, the daughter's explanation is eminently reasonable. And, because the delay is not "inconsistent with the occurrence of the offense," the letter was admissible under Code § 19.2-268.2 for the purpose of corroborating the daughter's testimony. See Woodard, 19 Va. App. at 28, 448 S.E.2d at 330 (holding that the thirteen-year-old victim's two-month delay in reporting her rape "is explained by and completely consistent with the all too common circumstances surrounding sexual assault on minors—fear of

---

[4] At common law, the rule only permitted the introduction of a victim's complaint in prosecutions for rape. However, Code § 19.2-268.2 extended the common law exception "to crimes for which the rule did not previously apply, such as sodomy, aggravated sexual battery, fornication, and indecent liberties with children." Terry, 24 Va. App. at 633, 484 S.E.2d at 617.

[5] In this respect, the present case differs from Castelow v. Commonwealth, 29 Va. App. 305, 512 S.E.2d 137 (1999), where we held that the victim's statement did not qualify as a "recent complaint" because the victim presented no evidence to explain the sixteen-month delay between the incident and the subsequent complaint. In Castelow, we reasoned that the victim therefore failed to provide an adequate foundation to guide the trial court's exercise of discretion. See id. at 311-12, 512 S.E.2d at 140. Here, in contrast, the victim did provide an explanation for the delay, and, as such, a foundation to guide the court's discretion was firmly in place.

disbelief by others and threat of further harm from the assailant"); see also Brown, 37 Va. App. at 173, 554 S.E.2d at 713 (holding that the eleven-year-old victim's twenty-one-month delay in reporting her grandfather's inappropriate sexual conduct was adequately explained where the child testified "that she did not tell anyone about the incident because her grandfather told her not to tell," she "didn't think anybody was going to believe her," and "she felt scared and threatened" by the defendant); Terry, 24 Va. App. at 636, 484 S.E.2d at 618 (holding that twelve-year-old victim adequately explained ten-month delay where the victim "was afraid her mother would not believe her because the defendant was her mother's good friend" and she was afraid that, if she told her father, "he would hurt the defendant and end up in jail"); cf. Lindsey, 22 Va. App. at 16-17, 467 S.E.2d at 827 (holding that a letter written by a thirteen-year-old victim two years after her alleged rape was admissible, reasoning that the "issue of the two-year delay was one of credibility," not admissibility).

Wilson, however, asserts that the letter his daughter wrote to her grandmother is inadmissible because the daughter told her stepmother about the abuse two years earlier, and, thus, the letter was not the victim's "first complaint." However, neither the common law nor Code § 19.2-268.2 conditions admissibility of a victim's complaint on whether the complaint is the victim's "first" outcry. Rather, all that is required is that the complaint was made "recently after commission of the offense." "Recent" does not necessarily equate to "first." Indeed, we have previously upheld the admission of subsequent complaints under Code § 19.2-268.2. In Terry, for example, the twelve-year-old victim told two different friends about her rape. Those friends encouraged the victim to tell her mother and, several months later, the victim finally told her mother what had happened. We affirmed the trial court's admission of the victim's subsequent complaint to her mother, reasoning that the complaint satisfied Code § 19.2-268.2.

<u>See</u> 24 Va. App. at 630-31, 484 S.E.2d at 615.  Thus, to the extent that Wilson argues that the letter is inadmissible because it is not a "first" complaint, that argument has no merit.

Wilson also argues that, because the letter was written more than two years after the daughter first spoke with her stepmother about the abuse, it cannot qualify as a "recent" complaint.  However, the timeliness of a "recent complaint" is measured as of the date of the offense, not as of the date of prior complaints.  Considering the ongoing nature of the abuse in this case, the date of the daughter's discussion with her stepmother is irrelevant to the timeliness of the subsequent complaint, especially as that subsequent complaint pertains to events (such as the attempted rape) that occurred well after the 2001 phone conversation between the daughter and her stepmother.  Accordingly, this argument is also without merit.

Because the daughter adequately explained the delay between the incidents of abuse and the date that she wrote the letter to her grandmother, the letter fell within the "recent complaint" hearsay exception established by Code § 19.2-268.2 and was admissible, not as independent evidence, but "for the purpose of corroborating the testimony of the complaining witness."  <u>See</u> <u>Breeden v. Commonwealth</u>, 43 Va. App. 169, 185, 596 S.E.2d 563, 571 (2004) ("Code § 19.2-268.2 limits the admissibility of evidence concerning recent complaints of sexual assault to corroboration purposes only and proscribes its use as independent evidence.").  Thus, the trial court did not abuse its discretion by admitting the letter into evidence.

B.  <u>Whether the Evidence Was Sufficient to Support Wilson's Convictions</u>

When the sufficiency of the evidence is challenged on appeal, the judgment of the trial court will not be set aside unless it appears from the evidence that the judgment is "plainly wrong or without evidence to support it."  <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  Also, "[g]reat deference must be given to the factfinder who, having

seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1988).

Wilson does not argue that the evidence, viewed in the light most favorable to the Commonwealth, fails to establish an essential element of any of the charged offenses. Rather, Wilson contends that the evidence was insufficient to support his convictions because his daughter's testimony was inherently unbelievable. However, "where a trial court sitting without a jury hears witnesses testify and observes their demeanor on the stand, it has the right to believe or disbelieve their statements." Morning v. Commonwealth, 37 Va. App. 679, 686, 561 S.E.2d 23, 26 (2002); see also Aldridge v. Commonwealth, 44 Va. App. 618, 654, 606 S.E.2d 539, 557 (2004). Moreover, a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim. Garland v. Commonwealth, 8 Va. App. 189, 191-93, 379 S.E.2d 146, 147 (1989); see also Willis & Bell v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 812 (1977) (noting that convictions for crimes of a sexual nature may depend upon the "uncorroborated testimony of a prosecutrix if her evidence is credible, and the guilt of the accused is believed by the [fact finder] beyond a reasonable doubt"). As we have noted, "[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." Garland, 8 Va. App. at 192, 379 S.E.2d at 147.

The trial court here specifically found that the daughter was a credible witness. As noted by the court, the daughter "gave an excellent account of her abilities to observe and remember and communicate what had occurred," and the court therefore "resolve[d] the credibility issue in her favor." In light of Wilson's two prior felony convictions—which, according to Code § 19.2-269, the trial court was permitted to consider when assessing his credibility—we cannot

say that the trial court erred in determining that the daughter's testimony was more credible than that of the defendant.

Moreover, the daughter's testimony was not "so contrary to human experience as to render it unworthy of belief." Willis, 218 Va. at 563, 238 S.E.2d at 813. Wilson's conduct, as described by his daughter, was—although reprehensible—not so extraordinary and out of the realm of human experience as to render her testimony unbelievable.

Wilson, however, argues that the daughter's "silence during and after the alleged incidents of sex abuse" indicates that her testimony was inherently incredible. Generally, failure to report an incident of sexual abuse for an unreasonably long period casts "suspicion and doubt" on the victim's testimony, "unless there is a credible explanation for such delay." Id. However, as discussed above, the daughter explained that she did not immediately report Wilson's conduct because of her fear of him and her shame and embarrassment at what was happening to her. The daughter and her brother both testified—and Wilson admitted—that Wilson occasionally beats his children. Thus, the daughter's explanation for her delay in reporting Wilson's conduct is consistent with human experience and does not render her testimony inherently incredible. See Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991) (rejecting argument that victim's failure to immediately report incident rendered his testimony incredible as a matter of law, noting that "[t]he victim's youth, fright and embarrassment certainly provided the jury with an acceptable explanation for his behavior in these circumstances"); see also Love v. Commonwealth, 18 Va. App. 84, 441 S.E.2d 709 (1994) (holding that thirteen-year-old victim's seven-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible).

Wilson also contends that the daughter's testimony is unworthy of belief because neither her brother nor her stepbrother ever awoke while Wilson was allegedly in the room with them.

- 13 -

However, both the brother and the stepbrother admitted to being heavy sleepers, and the incidents in the bedroom occurred in the early hours of the morning when the boys would have been sound asleep. Thus, the fact that neither boy awakened during the incidents of abuse is insufficient to render the daughter's testimony inherently unbelievable. Cf. Schrum v. Commonwealth, 219 Va. 204, 207-08, 246 S.E.2d 893, 896 (1978) (disregarding defendant's argument that fourteen-year-old rape victim's testimony was inherently incredible because, according to her testimony, the rape occurred in a hallway near four sleeping children and an elderly aunt, none of whom awakened).

Considered as a whole, the daughter's testimony was credible and was sufficient to prove beyond a reasonable doubt that Wilson was guilty of the crimes as charged. Because the trial court's judgment is not plainly wrong or without evidence to support it, we affirm his convictions.

### III.  CONCLUSION

For these reasons, we hold that the trial court did not abuse its discretion in admitting the letter into evidence under the "recent complaint" exception contained in Code § 19.2-268.2. Also, we hold that the trial court did not err in determining that the evidence was sufficient to support Wilson's convictions for each of the crimes charged. However, we remand this case for the limited purpose of correcting the error reflected in the conviction and sentencing orders as to Wilson's conviction for attempted forcible sodomy.

Affirmed and remanded.