UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges O'Brien, Russell and Retired Judge Bumgardner[*]
Argued at Norfolk, Virginia

DANIELLE CLARK, A/K/A DANIELLE STIFF,
 A/K/A DANIELLE SLATER

MEMORANDUM OPINION[**] BY
v.       Record No. 0980-17-1       JUDGE MARY GRACE O'BRIEN
                                    JULY 24, 2018
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

Tiffany T. Crawford (The Law Office of Shelly F. Wood, P.C., on
brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

A jury convicted Danielle Clark ("appellant") of unlawfully throwing a missile at an

occupied building, in violation of Code § 18.2-279, and recommended a $2,500 fine.  The court

imposed the fine and suspended $2,000, on the condition that appellant maintain good behavior for

two years and "have no contact, direct or indirect, with the victim in this matter."  Appellant

contends that the court erred by "denying the motion to set aside the verdict because the evidence

was not sufficient to prove the allegations."  Finding no error, we affirm.

---

[*] Judge Bumgardner participated in the hearing and decision of this case in his capacity as a
senior judge of this Court prior to July 1, 2018 and thereafter by designation pursuant to Code
§ 17.1-400(D).

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We review the evidence in the light most favorable to the prevailing party, the Commonwealth. Cartagena v. Commonwealth, 68 Va. App. 202, 208, 807 S.E.2d 223, 226 (2017). On the night of January 10, 2016, Latasha Brookman, her children, and A.J. Clark were inside her apartment. Clark had also spent the previous night at Brookman's residence. At approximately 11:00 p.m., as Brookman and Clark were watching television in her bedroom, Brookman heard a knock at the front door. She attempted to look through the peephole, but it was blocked. She asked who was at the door, and appellant responded, "It's Queen . . . . Tell [Clark] to come outside." Brookman knew that appellant's nickname was "Queen" and that she and Clark had a child together. Appellant repeated her request that Clark come outside. Brookman was able to look through the peephole and recognized appellant.

Brookman told Clark that she was going to open the door, but he said, "Don't open the door. She's going to fight." Clark left the apartment through a back door, and Brookman told her children to stay in their bedroom.

From a front window, Brookman saw appellant "lift[] up her arm" and throw a rock, later determined to be a piece of concrete. The rock came through the window and struck Brookman on the head. She subsequently heard appellant "continuously striking [her] window" with an unknown object. Brookman warned appellant that she was calling the police, and appellant responded, "I don't give a fuck. Call them." Appellant then left the scene.

At trial, Brookman identified photographs depicting the rock, the damage to the window, and the glass that fell inside her house. She testified that she took the photographs "[l]ess than two hours" following the incident "after the police . . . came." Brookman filed a criminal complaint two days later.

Two of Brookman's children also testified. Brookman's seventeen-year-old daughter stated that on the night of the incident, she heard knocking on her bedroom window and saw two people outside. A woman she did not recognize called her by name and told her to open the door. However, she stayed in her room until she heard the sound of "glass smashing." She testified that she did not recall if Clark was at the apartment that night.

After the court conducted *voir dire* and found her competent to testify, Brookman's eleven-year-old daughter told the jury that she heard knocking at the front door, and she followed her mother's directions and went to her sister's bedroom. She heard someone at the bedroom window calling for her older sister. She stayed in the bedroom until she heard "someone thr[o]w [a] rock through the [front] window." At that time, she went to the foyer, and saw a "big rock on the floor." She also testified that she saw Clark in the apartment that night.

Clark, who married appellant two weeks before the trial, testified on her behalf. Although he admitted having a prior relationship with Brookman, he denied being in her apartment the night before the incident. According to Clark, appellant, who was on her way to a hair appointment, dropped him off at Brookman's residence on January 10, so he could tell Brookman that he and appellant were engaged to be married. Clark testified that appellant returned approximately forty minutes later, and the three of them talked for ten or fifteen minutes; when the conversation became "heated," he and appellant left. Clark stated that he did not see appellant throw anything and that the front window was intact when they left.

Appellant's friend and hairdresser testified that appellant came to her residence for a hair appointment between noon and 1:00 p.m. on January 10, 2016. She stated that appellant left between 5:00 p.m. and 6:00 p.m.

Appellant testified that she and Clark had been in a relationship for nearly five years before their marriage and that they had a child together. Appellant stated that she was aware of Clark's

infidelity with Brookman, and told Clark that they needed to meet with Brookman for him "to apologize, set the record straight and move forward."

Appellant stated that she dropped off Clark at Brookman's apartment on January 10 and went to her hair appointment. She returned around 7:15 p.m., identified herself as "Queen," and Brookman let her in. Appellant told the jury that she, Clark, and Brookman "sat down and immediately tried talking about everything that went on throughout the year" because "[i]t wasn't just one time that [Clark] was unfaithful with her." Appellant testified that they talked for five to six minutes and that Brookman became upset, so she and Clark left. Appellant stated that when they left the apartment, the window was not broken.

At the conclusion of both the Commonwealth's evidence and the completed case, the court denied appellant's motions to strike. Following her conviction, appellant moved to set aside the verdict, which the court also denied.

## DISCUSSION

In considering the sufficiency of the evidence, this Court "will affirm the [conviction] unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). The Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).

Code § 18.2-279 provides, in relevant part:

> If any person . . . maliciously throws any missile at or against any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending is guilty of a Class 4 felony.

. . . If any such act be done unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony.

Appellant first contends that the evidence was insufficient to convict her of unlawfully throwing a missile at an occupied building because "[t]here is no evidence of any life being in peril in this case." She also asserts that the testimony of the complaining witness and her daughters was "inherently incredible."

According to the statutory language, a conviction under Code § 18.2-279 does not require that appellant's actions in fact placed lives in peril, only that lives "*may* be put in peril." See Kirby v. Commonwealth, 264 Va. 440, 445-46, 570 S.E.2d 832, 834-35 (2002) (holding that shooting near, but not necessarily at, the intended victim was sufficient to satisfy the "may be put in peril" element of Code § 18.2-279); Dowdy v. Commonwealth, 220 Va. 114, 117, 255 S.E.2d 506, 508 (1979) (noting that Code § 18.2-279 does not require proof "that human life was, in fact, endangered"); Strickland v. Commonwealth, 16 Va. App. 180, 182, 428 S.E.2d 507, 508 (1993) (finding that the "possibility" of ricochet from shooting a firearm at a ceiling of an occupied room satisfied the "put in peril" requirement of Code § 18.2-279).

Here, the evidence was sufficient to establish that appellant's actions may have "put [Brookman's life] in peril." Brookman testified that a piece of concrete was thrown through her window and hit her in the head. Although she did not seek medical attention, the rock actually struck her and had the potential to cause serious injury. The evidence was sufficient to find not only that appellant's actions *may* have put Brookman's life in peril, but that her actions *actually* put Brookman's life in peril.

Appellant also argues that the evidence was insufficient to convict her because Brookman's testimony was "inherently incredible" and was contradicted in part by her seventeen-year-old daughter's testimony. "The sole responsibility to determine the credibility of witnesses, the weight given to their testimony, and the inferences to be drawn from proven facts lies solely with the fact

- 5 -

finder." Jennings v. Commonwealth, 67 Va. App. 620, 625, 798 S.E.2d 828, 831 (2017) (citing Commonwealth v. McNeal, 282 Va. 16, 22, 710 S.E.2d 733, 736 (2011)). The Court accepts the fact finder's credibility determination "unless, 'as a matter of law, the testimony is inherently incredible.'" Nobrega v. Commonwealth, 271 Va. 508, 518, 628 S.E.2d 922, 927 (2006) (quoting Walker v. Commonwealth, 258 Va. 54, 71, 515 S.E.2d 565, 575 (1999)).

To support her assertion that Brookman's testimony was incredible, appellant notes that although Brookman lived in a densely populated neighborhood, no one reported the disturbance. She also disputes the fact that Brookman called the police because Brookman could not remember the responding officers' names, and the only photographs that were introduced into evidence were taken by Brookman, not police officers.

The neighbors' failure to respond to a disturbance at Brookman's residence did not render her testimony inherently incredible. See Wilson v. Commonwealth, 46 Va. App. 73, 615 S.E.2d 500 (2005). In Wilson, this Court affirmed a defendant's sexual assault conviction, and rejected his argument that the victim's testimony was inherently incredible because her siblings sleeping in the same room did not wake up during the incidents. Id. at 89, 615 S.E.2d at 508. The evidence indicated that the siblings were heavy sleepers. Id. The Court concluded that "the fact that neither boy awakened during the incidents of abuse is insufficient to render the [victim]'s testimony inherently unbelievable." Id.

Similarly, here, the neighbors' lack of intervention during the incident did not make Brookman's testimony inherently incredible. Photographs of the rock, shattered glass, and broken window blinds corroborated her testimony. The fact that police officers neither took these photographs nor testified is immaterial. Additionally, Brookman's daughters both related that they heard a commotion and glass breaking, further corroborating Brookman's testimony.

Appellant relies on purported inconsistencies in the girls' testimony as a basis for her contention that they were not believable. However, each girl's testimony was materially consistent with her sister's account. Although one daughter testified about seeing two people outside the residence, and Brookman only identified one person, appellant, the accounts are not mutually exclusive. Time passed between their respective observations. Further, although Brookman's seventeen-year-old daughter did not recall if Clark was present in the apartment, the eleven year old confirmed that she saw him in the foyer with her mother.

Finally, the jury was free to disregard appellant's self-serving testimony. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Appellant's version of the events was contradicted by her own witness. Appellant stated that she dropped Clark at Brookman's residence, went to a hair appointment, and returned forty minutes later, approximately 7:15 p.m. However, her witness stated that appellant was at her house from noon until 5:00 p.m. or 6:00 p.m.

The jury rejected appellant's explanation that she, Clark, and Brookman agreed to meet at Brookman's apartment to formally end any relationship between Clark and Brookman. The record indicates that the jury accepted the version of events presented by the Commonwealth: that appellant found Clark at another woman's home, became angry, and threw a rock at her window, breaking it and causing injury. Because the evidence supports this conclusion, we affirm appellant's conviction for unlawfully throwing a missile at an occupied building, in violation of Code § 18.2-279.

Affirmed.