COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Ortiz and Causey
Argued by videoconference


AUSTIN GUY COX

v.        Record No. 0323-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
JANUARY 17, 2023


FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge

Gregory T. Casker for appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Austin Guy Cox ("appellant") challenges the sufficiency of the evidence underlying his

convictions for object sexual penetration, in violation of Code § 18.2-67.2, and rape, in violation

of Code § 18.2-61.  For the following reasons, we affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]."  *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  This

standard requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn [from that evidence]."  *Bagley v. Commonwealth*, 73 Va. App. 1,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On January 28, 2019, appellant and C.S.[1] were in an animal care class together taught that day by substitute teacher Ashley Sawyers. The two students had previously dated but had ended their relationship about one year before. Appellant's desk was behind C.S.'s desk; according to Sawyers, while the two students partnered together for an assignment, C.S. "turned all the way around in her desk, and she was sort of messing with [appellant] and like trying to . . . sort of touch his hand." Sawyers was not certain whether C.S. touched appellant or anything on his desk.

C.S. testified that appellant turned around to do the assignment and that appellant touched her desk. She further testified that appellant asked Sawyers in the middle of class if he and C.S. could feed the animals in the "Ag shop" across the hallway from the classroom. Sawyers testified that appellant asked if he alone could feed the animals and that C.S. left after him without Sawyers' permission.

Footage from a school hallway camera showed that appellant and C.S. left the classroom and entered the Ag shop at 11:27:32 a.m. No one else was in the Ag shop at that time. C.S. testified that once she and appellant entered the room, appellant began "hugging [her] and trying to kiss" her but she pushed him away. She then stood on a chair and "was just dancing around being goofy." When she got off the chair, appellant came behind her and "pinned [her] arms above [her] head" with one hand while her "chest and [her] stomach [were] on the desk." Appellant "pull[ed her] pants down and he put a finger into [her] vagina for a second." He then removed his finger and put his penis into her vagina.

---

[1] We use initials, instead of C.S.'s name, to protect her privacy.

C.S. testified that she yelled "[n]o" and "[s]top" "just about as loud as [she] could." Appellant did not respond to her cries and continued penetrating her. C.S. freed one of her hands, grabbed a "metal thing,"[2] and hit appellant's forearm, injuring him. Appellant grabbed the metal object, threw it across the room, "put a tighter grip onto [C.S.'s] wrists and kept going." He eventually stopped but C.S. did not know why. She testified that the whole incident lasted "a few minutes" and that she did not want to have sexual intercourse with appellant that day nor did she want him to penetrate her vagina with his finger.

C.S. and appellant then went outside to the dog kennel. A camera by the dog kennel shows that they exited the Ag shop at 11:32:42, demonstrating that they were in the Ag shop for five minutes and ten seconds. They were outside only briefly before reentering the Ag shop. Another student entered the Ag shop at 11:34:56 a.m. and questioned appellant and C.S. about drinks. That student then went back to the classroom followed shortly thereafter by C.S. and appellant. C.S. testified that she did not tell the other student or Sawyers what appellant had done because she "was still processing what just happened."

C.S. texted her boyfriend about the incident once she got back to class. She told another teacher about the incident after class ended; that teacher directed her to speak with guidance counselor Kristen Belcher. Belcher testified that C.S. "seemed very shaken up [and] nervous" and that C.S. said that appellant had forced her to perform sexual acts in the Ag shop. Patrick County Sheriff Investigator Tennille Jessup also interviewed C.S. that day. C.S. told Jessup that appellant "inserted his penis into her vagina and that she did not consent to that" and that appellant also "placed his finger into her vagina."

---

[2] The Ag shop was also used for welding.

C.S. then went to the hospital where sexual assault nurse examiner Stephanie Hodges conducted a forensic examination and a PERK kit. Hodges testified that C.S. had no vaginal tears, abrasions, or other injuries to her vagina but that fewer than 50% of rapes result in vaginal injury. Hodges testified that her findings were consistent with C.S.'s reporting of the incident. In contrast to C.S.'s trial testimony that appellant "didn't say anything the whole time," C.S. told Hodges that appellant said that he wanted to have sex with C.S. after pulling her pants and underwear down. When showed a photograph of appellant's arm injury, Hodges opined that his injury was more consistent with an abrasion than an animal scratch.

Patrick County Sheriff Investigator Katharine Layman interviewed appellant with his mother. Appellant denied sexually assaulting C.S. and stated that he and C.S. were never alone together that day. He further denied that video would show him and C.S. entering a classroom alone. He stated that he might have some of C.S.'s DNA on his hand because she had "tried to grab [his] hand." He told Layman that a rabbit in the Ag shop caused the injury to his arm by scratching him. Layman testified that the marks did not look like rabbit scratches. Medical staff completed a PERK kit for appellant and returned it to Layman.

The next day, appellant called Layman voluntarily to tell her that he remembered that he was briefly alone with C.S. in the Ag shop. He stated that he showed another student where drinks were, and he and the other student went back to the classroom. Appellant claimed that he then returned to the Ag shop and that C.S. followed him without permission. Appellant stated that he had been alone with C.S. for "about a minute." He explained that he was not thinking clearly and was scared during his initial interview with Layman.

Jessup interviewed C.S. a second time during which C.S. told Jessup that appellant placed a finger in her vagina first and his penis second. C.S. told Jessup that appellant "had her hands in front of her pinned to a desk" but that "[s]he was able to loosen one of her hands" and

- 4 -

grab a metal object that she used to scratch his arm before appellant grabbed the piece of metal and threw it.

Timothy McClure with the Virginia Department of Forensic Science analyzed the PERK kits for appellant and C.S. C.S.'s vaginal and cervical samples included a DNA mixture containing C.S.'s DNA and that of another contributor but there was not enough DNA in the mixture for McClure to compare to appellant's DNA sample. Appellant's non-sperm pubic sample included a DNA mixture containing more female DNA than male DNA. McClure concluded that C.S. could not be eliminated as a contributor to that DNA mixture. The probability of randomly selecting an unrelated individual who would be included as a contributor to the DNA mixture was approximately 1 in 1.3 thousand in the Caucasian population, 1 in 3.4 thousand in the African American population, and 1 in 760 in the Hispanic population.

McClure sent appellant's sperm pubic sample to forensic scientist supervisor Lisa Schiermeier-Wood to analyze. Schiermeier-Wood concluded that the sperm pubic sample had one or two contributors in addition to appellant and that C.S. could not be eliminated as a contributor to the sample. The match was 33 million times more probable than a coincidental match to an African American person, 3.8 million times more probable than a coincidental match to an unrelated Caucasian person, and 2 million times more probable than a coincidental match to an unrelated Hispanic person.

McClure testified that trace DNA can be left on items and that, if somebody were to grab another's hand, it is possible that DNA could be transferred. Similarly, McClure testified that it is possible to transfer DNA by handling an object, such as a pen, that another person had recently handled but that explanation is unlikely to have produced the amount of female DNA in appellant's pubic sample.

Sawyers testified as part of appellant's case in chief that she did not hear any yelling or screaming that day and that C.S. did not seem upset when she returned from the Ag shop. Sawyers admitted that she did not notify the regular teacher that C.S. had left the room without permission.

The trial court found that the video proved that there was "ample time" for appellant to perpetrate the attack that C.S. described and that, despite a few minor inconsistencies, C.S. "was fairly consistent about what happened and how it happened." The trial court noted that there were "equal inconsistencies on the part of [appellant]" and remarked that, had the case "simply been a matter of [C.S.] making a complaint, and [appellant] saying, 'I never did it,' . . . there would be equipoise." The trial court then found, however, that it had two other pieces of evidence: testimony that appellant's injury was inconsistent with a rabbit scratch and the DNA evidence, which the trial court described as "the tipping point." Accordingly, the trial court found appellant guilty of object sexual penetration and rape. This appeal followed.

ANALYSIS

On appeal, appellant challenges the sufficiency of the evidence supporting his convictions.[3]

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v.*

---

[3] The Commonwealth contends that appellant did not preserve his challenge to his object sexual penetration conviction under Rule 5A:20(e) because his opening brief contains no citation to the record or any authority for his assertion that the evidence was insufficient to show object sexual penetration. *See* Rule 5A:20(e) ("The opening brief of appellant must contain . . . the argument (including principles of law and authorities) relating to each assignment of error."). However, we conclude that appellant's opening brief, which contains legal authority regarding sufficiency of the evidence claims and specific argument regarding the object sexual penetration conviction, complies with Rule 5A:20(e).

*Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

An accused is guilty of object sexual penetration "if he . . . penetrates the labia majora . . . of a complaining witness, . . . other than for a bona fide medical purpose, . . . against the will of the complaining witness, by force, threat, or intimidation of or against the complaining witness." Code § 18.2-67.2(A)(2). Penetration with a finger is sufficient to convict a defendant of object sexual penetration. *Bell v. Commonwealth*, 22 Va. App. 93, 98-99 (1996). An accused is guilty of rape if he "has sexual intercourse with a complaining witness . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness." Code § 18.2-61(A).

Appellant asserts that the evidence was insufficient to support his object sexual penetration and rape convictions because (1) the trial court found that C.S.'s testimony and appellant's statements to law enforcement were in equipoise, and (2) the DNA evidence was insufficient to support the convictions because there were innocent ways in which C.S.'s DNA could have been transferred to appellant's pubic area.

Appellant specifically attacks the DNA evidence in two ways. First, he argues that, although C.S. could not be eliminated as a contributor of DNA found in appellant's pubic area, the DNA testing did not definitively establish her as a contributor. Second, he argues that there were innocent reasons C.S.'s DNA may have been on appellant's pubic area. For example,

appellant suggests that C.S. may have touched appellant's hand while doing an assignment and then appellant may have touched his pubic area while using the bathroom later, thus transferring C.S.'s DNA to his pubic area.

However, in considering whether the DNA evidence corroborates C.S.'s testimony, we conclude that appellant's arguments fall short. As for appellant's first argument, McClure testified that C.S. could not be eliminated as a contributor to the non-sperm fraction of DNA mixture taken from appellant's pubic area and that the probability of randomly selecting an unrelated individual who would be included as a contributor to the DNA mixture was very low. Schiermeier-Wood examined the DNA mixture profile from the sperm fraction of appellant's pubic area sample and determined that there was DNA from one or two unknown people and appellant. C.S. could not be eliminated as being one of the contributors, and the odds that it was her DNA were very high. As for appellant's second argument, although McClure testified that the transfer scenario appellant describes was technically possible, his testimony was clear that such a scenario was unlikely, particularly given the high amount of female DNA contained in the non-sperm mixture. A reasonable fact finder could conclude from this testimony that the DNA evidence made it more likely that C.S. was telling the truth about the incident.

In the instant case, C.S. testified that appellant restrained her against her will while he inserted a finger and then his penis in her vagina. That testimony alone was sufficient to support appellant's convictions. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). "[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). In addition, although appellant asserts that the DNA

evidence does not corroborate C.S.'s testimony, we conclude that a reasonable fact finder could find that it supported her testimony about the incident. Accordingly, we conclude that C.S.'s testimony and the DNA evidence provided sufficient evidence supporting appellant's convictions.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*