COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Callins
Argued at Lexington, Virginia

LASHAWN DONNELL GORDON

v.       Record No. 1056-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE STUART A. RAPHAEL
SEPTEMBER 19, 2023

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Ronnie H. West (West Law Firm, PLC, on brief), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Lashawn Donnell Gordon was convicted of one count of computer solicitation of a child,

one count of sexual abuse of a child, and two counts of taking custodial indecent liberties with a

child. Gordon claims that the trial court erred by admitting the victim's hearsay statements to

corroborate her testimony about the sexual abuse she suffered. He also says that the evidence

failed to support the convictions. We disagree and affirm.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true

all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In January 2020, when she turned 13, M.R. was living with her mother in Lynchburg. M.R.'s cousin Nia lived nearby with her husband, Gordon, and their five children. Because of her mother's work schedule, M.R. went to Nia and Gordon's house each morning, and Nia took her to school. M.R. then returned to Nia's house after school. M.R. often spent the night there and occasionally did so on weekends. M.R. found herself alone at times with Gordon.

M.R. was at Nia's house on January 23, 2020, her thirteenth birthday. As she followed one of the younger children into the kitchen and bent over to pick him up, Gordon approached M.R. from behind, "grabbed [her] butt and just walked off." He did not say anything; he "just smirked."

A few weeks later, M.R. spent the night. As she sat on the sofa across from Gordon, she noticed that he was "just looking at [her]." Gordon then exposed his penis and "started . . . playing with it." He stood up, approached M.R., and asked her to touch it. She refused.

About a week later, M.R. and Gordon were again sitting together on the sofa. Gordon again exposed his penis, telling M.R. to touch it and suck it. She froze. But Gordon said, "it's okay," and he promised not to tell anyone. With one hand on her back, Gordon nudged her toward him, pushed her head to his lap, and put his penis in her mouth. M.R. didn't want to do it, but she was "scared" and "didn't know what else to do," so she "just did it," giving him "oral sex." After about five minutes, M.R. pulled away. She wasn't sure if Gordon had ejaculated. She went to the bathroom, rinsed out her mouth, and cried. When she got back to the living room, others had arrived. But M.R. said nothing about what just happened. She "didn't know what to say" and "didn't know how people would react." She felt "embarrassed."

In early March 2020, Gordon sent M.R. a Snapchat message saying, "I want you to swallow this dick and take this dick from the back." When M.R. screenshotted the message, Gordon asked her to delete it.[1] The messaging continued with M.R. writing, "I'm telling," "this ain't right," and "I feel bad." Gordon answered, "we can stop," and he repeatedly offered her money to keep quiet. He insisted, "I'm not using u my word," assuring her "No more worries I got u," and "You my lil dawg relax." When M.R said, "Bro I'm 13 like what are you doing," Gordon replied, "Nothing at all."

Gordon slipped money under M.R.'s door, but she left it sitting on the floor. When her mother picked her up from Nia's house, M.R. told her everything.

M.R. and her mother both testified at trial. Her mother recalled that M.R. texted her that day in March, needing to be picked up "urgently." Over Gordon's objection, M.R.'s mother recounted that M.R. showed her screenshots of Gordon's messages and said that Gordon had been "messing" with her. Although M.R. did not "go into detail at that moment," her mother remembered that M.R. cried and seemed "very sorrowful."

M.R. was interviewed by Lynchburg Police Detective Sydney Olivier. Over Gordon's objection, Detective Olivier testified that M.R. described two incidents involving Gordon. The first occurred at the end of January, when Gordon "grabbed her buttocks." The second occurred about a week later, when Gordon "placed his hand on the back of [M.R.'s] head and began pushing her down" for "oral sex," telling her "it was okay," "it could be their secret," and she could "do it."

Following those revelations, Gordon and his family relocated to Ohio. Detective Olivier spoke with Gordon by phone in October 2020. Gordon denied M.R.'s allegations and claimed

---

[1] M.R. explained at trial that when a person takes a screenshot of a Snapchat message, the sender is notified.

that his lewd Snapchat message was meant for another woman with whom he was having an affair. Gordon did not explain M.R.'s reference to her age in the message, however, and he admitted that the exchange was between him and M.R.

At the close of the Commonwealth's case, Gordon moved to strike the evidence on indictments one (forcible sodomy), three (sexual abuse of a child), and five (custodial indecent liberties), but not indictment six (the second count of custodial indecent liberties). The trial court dismissed the forcible-sodomy charge but overruled the motion to strike the remaining charges.

Testifying in his defense, Gordon denied the allegations, claiming that he had never abused M.R. He said that his initial Snapchat message was intended for his mistress, not M.R. He explained the rest of the message as an effort to bribe M.R. not to tell Nia that he was cheating on her.

At the close of evidence, the trial court denied Gordon's renewed motion to strike and convicted him of sexual abuse of a child, computer solicitation of a child, and two counts of custodial indecent liberties with a child. The court explained that it had "the opportunity to observe the witnesses on the stand, to observe their demeanor and [to] make judgments about their credibility." The court found M.R.'s testimony to be "credible." Gordon was sentenced to 14 years and 12 months' imprisonment, with 7 years and 30 months suspended.

ANALYSIS

A. *The trial court did not err in admitting the victim's hearsay statements about the abuse (Assignments of Error 1-2).*

Gordon argues that the trial court abused its discretion when it allowed M.R.'s mother and Detective Olivier to recount M.R.'s out-of-court statements about Gordon's misconduct. Gordon claims that such hearsay was not admissible under any exception to the hearsay rule. We disagree.

Code § 19.2-268.2 provides that "in any prosecution for criminal sexual assault . . . the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness." "[T]he 'only time requirement is that the complaint have been made without a delay [that] is unexplained or is inconsistent with the occurrence of the offense.'" *Wilson v. Commonwealth*, 46 Va. App. 73, 84 (2005) (quoting *Woodard v. Commonwealth*, 19 Va. App. 24, 27 (1994)). Whether the statement satisfies the "timeliness" requirement "is committed to the sound discretion of the trial court, and thereafter, timeliness is a matter for the trier of fact to consider in weighing the evidence." *Id.* (quoting *Woodard*, 19 Va. App. at 27).

The delay here was not long. The first incident occurred on M.R.'s birthday on January 23, and she told her mother everything in early March, less than two months later. M.R.'s receiving Gordon's lewd Snapchat message led her to report the abuse.

Moreover, the evidence sufficed to explain that relatively brief delay. M.R. did not tell anyone at first that Gordon had made her perform oral sex because she "didn't know how to," "didn't know what to say," and "didn't know how people would react." She felt "embarrassed." She told her sister not to tell anyone because she was "scared" and wanted to handle it herself. Those are perfectly understandable hesitations by a 13-year-old child who was being sexually abused by a member of her extended family.

Gordon's suggestion that M.R. should have reported the incidents sooner also rings hollow when he himself was pressuring her not to tell anyone. Not only was the brief period between the earlier incidents and M.R.'s report adequately explained, it was significantly shorter than in other cases upholding the admission of the victim's out-of-court statements under Code § 19.2-268.2. *See, e.g.*, *Brown v. Commonwealth*, 37 Va. App. 169, 174 (2001) ("[T]he delay of

approximately two years was sufficiently explained and provided an adequate foundation for the admission of the child's complaint."); *Terry v. Commonwealth*, 24 Va. App. 627, 635-36 (1997) (finding statement admissible where the child "did not tell her mother about the rape until ten months later" but adequately "explained the reasons for the delay"). Given M.R.'s "impressionable age, the ongoing nature of the abuse, and the family relationship between the parties, [her] explanation [was] eminently reasonable." *Wilson*, 46 Va. App. at 85.

*B. The evidence sufficed to convict on all counts (Assignments of Error 3-5).*

Gordon argues that the evidence was insufficient to support his convictions. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

*1. Sexual Abuse of a Child*

Under Code § 18.2-67.4:2, "[a]ny adult who, with lascivious intent, commits an act of sexual abuse, as defined in § 18.2-67.10, with any child 13 years of age or older but under 15 years of age is guilty of a Class 1 misdemeanor." Code § 18.2-67.10(6) defines sexual abuse as:

> [A]n act committed with the intent to sexually molest, arouse, or gratify any person, where:
>
> a. The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts; [or]

- 6 -

b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts . . . .

"'Intimate parts' means the genitalia, anus, groin, breast, or buttocks of any person, or the chest of a child under the age of 15." Code § 18.2-67.10(2).

Gordon argues that the evidence was insufficient to prove that he committed an act of sexual abuse on M.R. during the time frame alleged in Indictment 3: between February 1 and February 28, 2020. As to that time frame, he says that M.R.'s testimony established only that she "saw [his] penis" and there was "no evidence of any touching whatsoever."

Even assuming that the third incident in which Gordon forced M.R. to perform oral sex occurred in March 2020, not February, it would not invalidate the conviction. An indictment that imperfectly states the date of the offense is not invalid when, as here, "time is not the essence of the offense." Code § 19.2-226(6). When "[t]he question . . . is not who committed the crime, but whether the crime charged . . . was committed," a precise time is not essential. *Farhoumand v. Commonwealth*, 288 Va. 338, 352-53 (2014).[2] Gordon, for instance, did not dispute that M.R. frequently visited his home, nor did he assert "[a]n alibi-based defense." *Id.* at 352.

In short, the evidence sufficed to prove sexual abuse of a child.

*2. Computer Solicitation of a Child*

Code § 18.2-374.3(C)(3) makes it a crime for an adult "to use . . . electronic means[] for the purpose[] of soliciting . . . a child younger than 15 years of age to knowingly and intentionally . . . [p]ropose to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus . . . ." The statute criminalizes "the incitement to

___

[2] In "a *felony case* the Commonwealth may prove the commission of a crime charged on a date different from that alleged in the indictment." *Farhoumand*, 288 Va. at 351 (emphasis added) (quoting *Harris v. Commonwealth*, 185 Va. 26, 34 (1946)). Because Code § 19.2-226(6) is not limited to felony prosecutions, however, the same principle applies to misdemeanor prosecutions.

act illegally rather than actually committing the illegal act. Thus, . . . the defendant's solicitation of sexual behavior from a person that he believes is a child constitutes the behavior that the legislature intended to prohibit." *Grafmuller v. Commonwealth*, 57 Va. App. 58, 63-64 (2010).

Gordon concedes that "there was evidence at trial" that he used a communication system to "interact with [M.R.] after the [offenses] occurred." But he argues that the evidence was insufficient to prove that the system was used "to solicit or request" any act prohibited by the statute. In essence, he argues that he did not "[p]ropose" a prohibited sex act within the meaning of Code § 18.2-374.3(C).

Because the statute does not define the term *propose*, we "give it its ordinary meaning." *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (en banc); *see also Eberhardt v. Commonwealth*, 74 Va. App. 23, 32 (2021) ("An undefined term in a statute may be defined using its standard dictionary definition."). The word *propose* means to "form or declare a plan or intention"; "set before the mind"; "offer for consideration, discussion, acceptance, or adoption"; or "set up or declare as a formed purpose." *Propose*, *Webster's Third New Int'l Dictionary* (1981).

We fail to see what *else* Gordon could have had in mind—other than to *propose* a sex act—when he messaged M.R., "I want you to swallow this dick and take this dick from the back." A reasonable trier of fact could view that as an "offer" to engage in fellatio and intercourse; to "set" those ideas "before [M.R.'s] mind"; and to put forward those sex acts "for consideration, discussion, acceptance, or adoption." *Webster's*, *supra*. That inference is also consistent with the context, as Gordon sent this prurient message to a 13-year-old girl he had already strong-armed into performing fellatio. The trial court's finding was therefore not plainly wrong or without evidence to support it. The evidence sufficed to prove computer solicitation of a child.

### 3. Custodial Indecent Liberties

Under Code § 18.2-370.1, any adult who "maintains a custodial or supervisory relationship over a child under the age of 18 . . . [and] who, with lascivious intent, knowingly and intentionally . . . sexually abuses the child . . . is guilty of a Class 6 felony."  Sexual abuse is defined in part as the touching of a "complaining witness's intimate parts or material directly covering such intimate parts," which include the "buttocks of any person."  Code § 18.2-67.10. "[L]ascivious" intent means "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite."  *Moyer*, 33 Va. App. at 28 (quoting *McKeon v. Commonwealth*, 211 Va. 24, 27 (1970)).

Gordon argues that the Commonwealth failed to prove that he took indecent liberties while in a custodial relationship with M.R. between January 20 and January 30, 2020, as alleged in Indictment 5.[3]  He says that there was no evidence that the touching of M.R.'s buttocks was "intentional" or "of a sexual nature."

The evidence supports the trial court's conclusion that Gordon grabbed M.R.'s buttocks intentionally and in "a state of mind . . . eager for sexual indulgence."  *Moyer*, 33 Va. App. at 28. "Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements.  The statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011).  "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'"  *Rams v. Commonwealth*,

---

[3] Gordon does not contest that he took custodial indecent liberties between February 3 and February 28, 2020, as alleged in the indictment for that offense.

70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

M.R. testified that Gordon grabbed her buttocks on her birthday. He did not apologize or say it was accidental; he "smirked" and walked away. About three weeks later, he pulled out his penis and told M.R. to touch it. Then about a week after that, he forced M.R. to touch his penis before making her perform oral sex. Later, Gordon sent M.R. a Snapchat message conveying his desire for oral sex and intercourse. These facts, viewed in their entirety, support the trial court's conclusion that Gordon possessed the requisite intent when he grabbed M.R.'s buttocks on her thirteenth birthday. *See, e.g.*, *Commonwealth v. Minor*, 267 Va. 166, 176 (2004) ("[E]vidence of other offenses of like character is admissible in prosecutions for crime involving a depraved sexual instinct." (quoting *Lovely v. United States*, 169 F.2d 386, 390 (4th Cir. 1948))).

CONCLUSION

None of Gordon's arguments warrants reversing his convictions.

*Affirmed*.