COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Malveaux and Causey
Argued at Salem, Virginia


JAMES ANDREW NUTTER, S/K/A
 JAMES ANDREW NUTTER, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1275-21-3               JUDGE DORIS HENDERSON CAUSEY
                                                          JANUARY 10, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
James R. Swanson, Judge

(David A. Robinson; BSR Legal Group, on brief), for appellant.
Appellant submitting on brief.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


James Nutter ("appellant") was convicted in the Roanoke County Circuit Court ("trial

court") of rape, sodomy, and assault and battery.[1] On appeal, appellant argues sixteen assignments

of error.[2] We hold that there is no merit to the assignments of error relating to the sufficiency of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant does not challenge his conviction for assault and battery.

[2] The assignments of error are listed here individually. For brevity, they are consolidated in the opinion. Appellant alleges sixteen assignments of error on appeal. In Assignment of Error 1, he alleges that the trial court erred "when it made a finding of guilt beyond a reasonable doubt against [him], notwithstanding the trial court's finding that ' . . . there are evidentiary discrepancies [and] there are credibility issues to say the least. . . .'" In Assignment of Error 2, appellant claims that the trial court erred "when it considered the testimony of the complainant as credible, given the inconsistencies in testimony in contrast to other evidence presented." In Assignment of Error 3, appellant contends that the trial court erred "when it overruled the objection of the Defense and allowed the Commonwealth's Witness, Sergeant Hicks, to testify regarding statements made by the complainant." In Assignment of Error 4, appellant argues that the trial court wrongly overruled his objection, permitting Hicks to "testify regarding the complainant's mental state."

evidence to sustain the convictions for sodomy and rape, the trial court's decision to admit a police officer's testimony about the victim's complaint of the attack, and the trial court's determination of sentence. We further find that the remaining assignments of error are waived due to appellant's failure to adequately brief them in accordance with the rules of this Court. *See* Rule 5A:20(e). Thus, we hold that appellant has waived those arguments. Therefore, we affirm the judgment of the trial court.

---

Appellant next challenges the trial court's finding that the complainant's testimony was credible, given its purported direct conflict with other evidence. In Assignment of Error 5, appellant asserts that the court "erred when it considered the complainant's testimony as credible, when the testimony of the Commonwealth's Witness, Officer Panino, was in direct contrast thereto." In Assignment of Error 6, appellant argues that the court "erred when it considered the complainant's testimony as credible, when the testimony of the Commonwealth's Witness, Detective Thompson, was in direct contrast thereto." In Assignment of Error 7, appellant claims that the court "erred when it considered the complainant's testimony as credible, when the testimony of the Commonwealth's Witness, FNE Nurse Smith, was in direct contrast thereto." In Assignment of Error 8, appellant claims that the court "erred when it did not consider [his] testimony as credible and/or exonerating." In Assignment of Error 9, appellant contends that the court "erred when it sustained the objection of the Commonwealth, limiting [appellant's] testimony to exclude details regarding the contents of the website advertisement."

Appellant also challenges the propriety of many aspects of his cross-examination. In Assignment of Error 10, appellant complains that the court erred "when it overruled the objection of the Defense and allowed the Commonwealth to continue its argumentative cross-examination of [appellant] regarding thirty dollars." In Assignment of Error 11, he asserts that the court "erred when it overruled the objection of the Defense and allowed the Commonwealth to ask [appellant] to speculate as to the complainant's perceptions." In Assignment of Error 12, appellant claims that the court "erred when it overruled the objection of the Defense and allowed the Commonwealth to continue cross-examination of [appellant] in asking him to speculate as to the lighting at a location at times when he was not present." In Assignment of Error 13, appellant claims the court "erred when it overruled the objection of the Defense and allowed the Commonwealth to continue cross-examination of [appellant] on the identity of the complainant in a subsequent meeting assuming facts in contradiction of his original testimony."

Finally, appellant claims that the trial court abused its discretion at sentencing. In Assignment of Error 14, appellant claims that the court "erred in overruling the Defense's objection to the complainant testifying after the Defense had put on its case for sentencing." In Assignment of Error 15, appellant contends that the court "erred in its rationale and findings at sentencing and by imposing an overall active sentence of twenty-seven (27) years and twelve (12) months." In Assignment of Error 16, appellant argues that the court "erred when it denied [appellant's] Motion for Reconsideration, filed on November 11, 2021."

BACKGROUND[3]

On the evening of June 28, 2017, B.H.[4] was walking on Williamson Road in Roanoke looking for a "date."[5] Roanoke Police Sergeant Jason Hicks while on patrol saw and suspected that B.H. was prostituting. Hicks observed her cross the street, approach a white truck, get inside and ride away. Appellant, who knew B.H. from four prior instances of prostitution involving oral sex, was the driver of the white Ford pickup truck.

Appellant drove to the Water Authority lot, where he and B.H. had previous sexual encounters, but the gate blocked the entrance. Therefore, they went to a remote picnic area in Ingersoll Rand Park. They exited and went to the back of the truck. Appellant lowered the tailgate of the truck.

He pulled out his wallet, looked inside it, then put it back in his pocket. He commented that he knew he "had it" somewhere and went to the driver's compartment of the truck. B.H. believed that he was getting money from the passenger compartment to pay her for oral sex. When appellant returned to the rear of the truck, he struck B.H. in the face with his fist while holding a hard object. She testified that the force of the blow knocked her to the ground. Using his legs, appellant pinned B.H.'s arms to the ground. Appellant jerked B.H's pants and underwear off her body. Appellant then penetrated B.H's vagina with his penis. The penetration was against her will. B.H. said that she did not resist because she was scared. Appellant ordered her to perform oral sex. B.H. said that she complied because she thought that if she refused appellant would hurt her more than he already

---

[3] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[4] We use the victim's initials, rather than her name, to protect her privacy.

[5] Neither party disputes that B.H. was engaging in prostitution at the time. B.H. had prior convictions for a felony and a misdemeanor of moral turpitude.

had. After about an hour of rough sex, appellant ejaculated outside of B.H. and said, "I won't kill you if you don't turn me in." Appellant wiped himself with paper towels and dropped them on the ground.

B.H. re-entered the truck with appellant because she was unfamiliar with the surroundings. Appellant apologized for what he did and explained to her that he had been robbed earlier that week by other people. Appellant dropped off B.H. at a 7-Eleven on Williamson Road.[6] As she passed the front of the truck to enter the store, B.H. mentally noted the license plate number on appellant's vehicle.

Inside the store, B.H. tried to call her boyfriend and another person but could not reach either of them. She wrote down appellant's license plate number on a piece of paper and asked the store clerk to let callers for B.H. know that she had been beaten and raped. She left the store and started walking.

Sergeant Hicks saw B.H. near the 7-Eleven, "crying, upset, and bleeding everywhere." Hicks recognized her from earlier, offered to help, and asked what happened. B.H. gave him appellant's license plate number and told him that she had been beaten and raped. B.H. was first reluctant to do so, however, she agreed to pursue medical attention at Hicks' insistence. An ambulance transported B.H. to the hospital, where she stayed until the next day. She received stitches to repair a laceration in her lip. Examination revealed bruising to her arms and back. She also complained that her vaginal area was sore and her head hurt. B.H. described the attack to the sexual assault nurse who performed an examination and collected physical evidence from her body.

Hicks testified that B.H.'s face was bleeding when he saw her. He further testified that there was no indication that she was under the influence of any substance or experiencing a

_____

[6] The 7-Eleven was located about four miles from Ingersoll Rand Park. The store was about an eight-minute drive or an eighty-five-minute walk from the park.

- 4 -

mental health crisis. At trial, the Commonwealth introduced photographs of the physical injuries B.H. suffered in the attack. DNA evidence proved, and appellant stipulated, that his genetic material was collected from B.H.'s vagina in the examination.

B.H. admitted that she consumed about one-tenth of a gram of heroin on the morning of her assault but denied being under the influence of drugs that night. A police officer who took her statement at the hospital testified that, in the two hours he was with her, he saw no signs that B.H. was under the influence of drugs or alcohol. A detective also interviewed B.H. at the hospital and similarly indicated that she did not appear intoxicated or in need of mental health treatment. At the scene of the attack in Ingersoll Rand Park, the police found some discarded paper towels and a knife-sharpening device made of heavy-duty plastic. The device was about the same weight as a cell phone.

Appellant testified on his own behalf at trial. He testified that he recognized B.H. from prior sexual encounters and picked her up for a "date." As they drove away in his truck, B.H. agreed to perform oral sex for thirty dollars rather than her customary fee of forty dollars because appellant claimed he had only thirty dollars. Appellant testified that B.H. was agreeable to this arrangement because of their history.

Once they arrived at the park, appellant claimed that he gave B.H. thirty dollars and she performed oral sex on him. Appellant testified that she agreed to have vaginal sex in exchange for another twenty dollars. Afterward, appellant ejaculated on the ground, and cleaned himself with some wipes and toilet paper. Appellant then told B.H. that he did not have the additional twenty dollars in cash, nor did he have enough money in the bank to pay her. B.H. became upset and demanded that he pay her the money. According to appellant, B.H. said that he would "regret it" if he did not pay her. Appellant testified that the quarrel culminated when he

"mushed" B.H., or struck her with the palm of his hand, and she fell backwards on the ground. Appellant also testified that he then drove away, leaving B.H. at the park at about 9:00 p.m.

At the conclusion of all the evidence, the trial court acknowledged that there were "evidentiary discrepancies" and "credibility issues," but found that B.H.'s testimony was "detailed and for the most part persuasive." The trial court did not believe appellant's account. The trial court found that the Commonwealth had proven beyond a reasonable doubt that appellant was guilty of rape, sodomy, and assault and battery. The court sentenced appellant to forty-five years and twelve months of incarceration with eighteen years suspended.

ANALYSIS

*Sufficiency of the Evidence to Prove Rape and Sodomy*

In Assignments of Error 1 and 2, appellant challenges the sufficiency of the evidence to sustain his convictions for rape and sodomy. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The question on appeal is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

To sustain appellant's conviction for rape and sodomy, the Commonwealth needed to prove that the sexual acts occurred against B.H.'s will "by force, threat or intimidation."[7]

_____

[7] Code §§ 18.2-61 and 18.2-67.1(A)(2).

- 6 -

Challenging the sufficiency of the evidence to prove his convictions, appellant argues that B.H.'s testimony that the sex was not consensual was inherently incredible. In finding appellant guilty of the charged offenses, however, the trial court, sitting as the trier of fact, accepted the victim's testimony that the sex was not consensual. Sexual offenses are, "at core, . . . offense[s] against the will and consent of the victim." *Davison v. Commonwealth*, 69 Va. App. 321, 330 (2018) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 357, *aff'd*, 272 Va. 666 (2006)). "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

"[B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 192 (1989)). Accordingly, "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Id.* at 87. In addition, proof of "positive resistance" by the nonconsenting victim is not a requirement for a conviction of rape or sodomy. *Nelson v. Commonwealth*, 73 Va. App. 617, 625 (2021) (quoting *Jones v. Commonwealth*, 219 Va. 983,

986 (1979)); *see also* Code § 18.2-67.6 ("The Commonwealth need not demonstrate that the complaining witness cried out or physically resisted . . . in order to convict the accused of [rape or forcible sodomy].").

"[T]his [C]ourt will not seek to pass upon the credibility of the witnesses where their [testimony] is not inherently incredible." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (first and second alterations in original) (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Although B.H. entered appellant's truck willingly and agreed to perform oral sex on him for money, the encounter took a turn that she did not expect. At the park, after looking inside his wallet, appellant went to the passenger compartment of the vehicle. Rather than returning with money to pay B.H., he struck B.H. in the face with his fist while holding a hard object. The blow knocked the victim to the ground, and she was bleeding profusely. He then removed her pants and penetrated her with his penis. B.H. did not consent to the sex, but she was afraid to fight back for fear of being hurt further. After that, appellant forced the victim to perform oral sex upon him. She explained that she again did not fight back because she was afraid. Indeed, B.H. testified that appellant threatened to kill her if she reported him to the police.

After the attack, appellant dropped B.H. at a convenience store. She told someone there that she had been raped and beaten, and she tried to reach her boyfriend and another friend by phone. She did not succeed and walked away from the store. B.H. encountered Hicks, who had seen her earlier that evening when she was uninjured. Sergeant Hicks noticed that B.H. was then bleeding from the mouth and she was crying and upset. She told the officer she had been raped

- 8 -

and beaten. Hicks obtained medical assistance for B.H., and she was treated for her injuries at the hospital.

Photographs of the victim after the incident exhibited the injuries she sustained by the blow to the mouth and the attack that followed. "A picture may speak a thousand words, and these do." *Campbell v. Commonwealth*, 12 Va. App. 476, 484 (1991) (en banc). The force appellant used in inflicting B.H.'s injuries also corroborated her testimony that appellant accomplished the sexual acts against her will.

Upon these facts, a reasonable fact finder could conclude that the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of rape and sodomy.

*Admission of B.H.'s Report to Sergeant Hicks*

In Assignment of Error 3, appellant argues that the trial court erred in admitting B.H.'s report to Hicks that she had been raped and beaten. Appellant contends that the statement was inadmissible hearsay. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Wolfe v. Commonwealth*, 67 Va. App. 97, 106 (2016) (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988)). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay evidence is inadmissible at trial unless it falls into one of the recognized exceptions to the rule." *Clay v. Commonwealth*, 33 Va. App. 96, 104 (2000) (en banc), *aff'd*, 262 Va. 253 (2001).

Under Code § 19.2-268.2, in a prosecution for criminal sexual assault, "the fact that the person injured made a complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the

testimony of the complaining witness." Code § 19.2-268.2 codifies Virginia's common law "recent complaint" rule, thus admitting "evidence of a prompt complaint of [a crime involving improper sexual conduct] . . . to corroborate the complaining witness'[s] testimony regarding the occurrence of the [crime]." *Terry v. Commonwealth*, 24 Va. App. 627, 633 (1997). "[O]nly the fact of the complaint and not the details given therein may be admitted, but the scope of admission rests with the sound discretion of the trial court." *Woodard v. Commonwealth*, 19 Va. App. 24, 27 (1994). "Under this 'modern rule,' the 'only time requirement is that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense.'" *Wilson*, 46 Va. App. at 83 (quoting *Woodard*, 19 Va. App. at 27).

Appellant maintains that "[i]n order for [B.H.'s] statement to Sergeant Hicks to be admissible as outcry, [B.H.] would have to make her complaint without delay, *i.e.*, at the time she used the telephone to call for a ride home." We disagree, as any possible delay in B.H.'s report was neither "unexplained" nor "inconsistent with the occurrence of the offense." *Wilson*, 46 Va. App. at 83. The attack occurred in a remote area, and appellant dropped off B.H. at the 7-Eleven store afterward. B.H.'s initial attempt to get help after the attack, by calling her boyfriend and another person, failed. As she was walking away from the 7-Eleven where appellant left her, B.H. encountered Hicks. He observed that she was bleeding, crying, and upset, and asked what happened. She responded that she had been beaten and raped, a statement that explained her physical condition and mental distress. Under these facts, the trial court did not abuse its discretion in admitting B.H.'s statement to Hicks as corroboration of her testimony.

*Sentencing*

Appellant argues, as Assignment of Error 15, that the trial court abused its discretion in imposing an active sentence of twenty-seven years. "We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute

prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

The sentences the trial court imposed were within the ranges set by the legislature. *See* Code §§ 18.2-61(B) and 18.2-67.1(B). It was within the purview of the trial court to weigh any mitigating factors presented by appellant. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Appellant's sentence was "within the statutory range, and our task is complete." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018).

*Assignments of Error Waived*

Appellant failed to provide this Court with any argument about Assignments of Error 5 through 7 and 10 through 13. In addition, the arguments on brief pertaining to Assignments of Error 4, 8, 9, 14, and 16 do not contain any citation to legal authority to support them.

Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "We require adherence to this rule because '[a] court of review is entitled to have the issues clearly defined and to cite pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research.'" *Id.* (quoting *Jones*, 51 Va. App. at 734). "To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises." *Id.* (quoting *Jones*, 51 Va. App. at 734-35).

"[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant," this Court may treat the assignment of error as waived. *Parks v. Parks*, 52 Va. App. 663, 664 (2008); *see also Fadness v. Fadness*, 52 Va. App. 833, 851 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."). We find that appellant's failure to provide argument and legal authority to support these issues is significant, thus we treat the assignments of error as waived and we do not consider them.

## CONCLUSION

For the foregoing reasons, we find that the evidence was sufficient to prove appellant's guilt of rape and sodomy beyond a reasonable doubt, that the trial court did not abuse its discretion in admitting Hicks' testimony about B.H.'s report to him, and that the trial court did not abuse its sentencing discretion with the imposed sentence. Therefore, we affirm the judgment of the trial court.

*Affirmed*.