COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Raphael

UNPUBLISHED

JHONATHAN CASTRO CONTRERAS

v.      Record No. 1293-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 12, 2023

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Holly B. Smith, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Rebecca M. Garcia, Assistant
Attorney General, on brief), for appellee.

Jhonathan Castro Contreras appeals his convictions for rape of a victim under 13 years

old (Code § 18.2-61) and abduction with the intent to defile (Code § 18.2-48). He challenges the

trial court's conclusion that the victim's testimony was credible and that his own testimony was

not credible. As the evidence at trial supported the trial court's credibility determination and its

finding of guilt beyond a reasonable doubt, the Court affirms the judgment and unanimously

holds that oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In the fall of 2020, 12-year-old A.H. lived at an apartment complex and sometimes encountered Contreras when he visited the apartment on the floor below hers. Contreras was 20 years old at the time. When Contreras saw A.H., he would call her "cute," but A.H. did not reply. Contreras also tried to contact A.H. on Facebook, repeating that she was "cute" and asking when they could "meet up." A.H. did not know Contreras very well and did not want to meet him, so she did not respond.

One night in October, A.H. was walking to a friend's apartment when she noticed Contreras standing next to his car in the parking lot. The area was dark. The lights in the parking lot were not working, and there was no one else around. As A.H. walked past the front office, Contreras grabbed A.H.'s arm and "tossed" her into the backseat of his car. The car door was already open. After putting her inside, Contreras closed and locked the door. A.H. yelled, but she could not escape from the locked car and Contreras told her to be quiet.

Contreras drove to a nearby apartment complex and parked in a darkened area in the back. A.H. tried to use her phone to call for help, but the battery had died. Contreras then climbed into the backseat with A.H., prompting her to cry out again. He told her to be quiet and she complied, afraid he would harm her family. Contreras lowered his pants, partially pulled down A.H.'s pants, and climbed on top of her, restraining her hands. A.H. tried to "kick" him off, but he was too heavy. Contreras penetrated A.H.'s vagina with his penis and moved "back and forth." He stopped when a car approached, and A.H. began to yell and scream.

Contreras got dressed and drove A.H. back to her apartment complex. When he unlocked the car door, A.H. got out and ran home. She did not tell her family about the assault because she was afraid it would upset her sick mother. Feeling "grossed out of [her] body," A.H. showered and phoned her friend Sabina to tell her what happened. Sabina said that she was going to text Contreras on A.H.'s social media account. A.H. learned that Sabina had previously used A.H.'s Facebook account to reply to Contreras's messages and to arrange a meeting between A.H., Sabina, Contreras, and "Kevin." A.H. had no prior knowledge about those communications.

Two weeks later, Sabina's mother told A.H.'s mother about the assault. When A.H.'s mother asked about it, A.H. wept. Her mother described A.H. as "shaken" and "very afraid." A.H. called the police that night—November 11, 2020—and spoke with Officer Marc Meth. Meth testified that A.H. was "upset" and "crying" when he interviewed her.

Contreras was arrested and interviewed by Investigator Lang Craighill, assisted by an interpreter.[1] After receiving his *Miranda*[2] warnings, Contreras said that he had first met A.H. near the apartment office six to eight weeks earlier and that he had also communicated with her on Facebook. He said they met for "a date." Contreras admitted that he planned to have sex with her because she was interested in a "threesome," but he insisted that they "only talked."

When asked if A.H. had mentioned her age, Contreras said she had told him, but he could not remember what she said and that it "didn't seem important at the time." At first, he claimed they never left the apartment complex. But later, he said he drove A.H. to a nearby store to buy juice. Craighill testified that Contreras "did not verbally say" he'd had sex with A.H., "but he looked at me and nodded at one point when I told him I knew that he had sex with A.H."

---

[1] A partial transcript of the interview was admitted into evidence at trial.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

At trial, A.H. denied that she had planned to meet Contreras that night. She described the details of the assault recounted above and identified Contreras as the assailant. Details of her account were also corroborated by Officer Meth and by A.H.'s mother.

After the trial court overruled his motion to strike, Contreras testified that A.H. was the one who had arranged their meeting and that he thought she was 16 or 17 years old. Contreras claimed he decided not to have sex with her once she said she was only 15, and he denied any sexual contact. He claimed that A.H. got into his car voluntarily, and after they talked for ten minutes, they visited a nearby convenience store. He said he then drove her home and dropped her off. In closing argument, Contreras asked the trial court to reject A.H.'s testimony as not credible and to believe his version of events instead.

The trial court found Contreras guilty of both charges. It rejected Contreras's statements as "contradictory," noting that some were "flat out not true." The court had carefully observed the demeanor of Contreras and A.H. when they testified, and it found A.H.'s testimony more credible. To believe Contreras's testimony, for instance, one would have to accept that he met A.H. to have sex but then decided instead to buy juice at a convenience store.

The trial court sentenced Contreras to life in prison for the rape of a child under 13 and to 40 years' imprisonment for abduction with intent to defile, with the sentences to run consecutively. Contreras noted a timely appeal.

### ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). And we accept "the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Contreras asserts that the trial court erred by rejecting his testimony and believing A.H.'s account. He stresses that his "story" "make[s] [more] sense" than A.H.'s uncorroborated testimony because, to accept her account, the trial court had to find that Contreras happened to appear at the apartment complex when A.H. walked by and decided to abduct and rape her. He

asserts that A.H.'s testimony was "unreliable" because she made inconsistent statements about whether she disclosed the assault to Sabina before or after she showered. He also argues that the Commonwealth failed to corroborate A.H.'s testimony because there was no medical or forensic evidence. He notes that Sabina did not testify about any incriminating admissions he made and that the Commonwealth introduced no Facebook messages. Finally, he disputes Officer Craighill's testimony that Contreras admitted having sex with A.H. by "nodding." He says that Craighill "had no way of knowing the meaning of the nod" because Craighill did not know "exactly what was being said" by the Spanish interpreter when Contreras nodded.

Those arguments are unavailing. The trial court had the "opportunity to observe the demeanor of the witnesses as they testif[ied]," *Dalton*, 64 Va. App. at 525, and the court rejected Contreras's statements as "contradictory," noting that some were "flat out not true." Nothing in the record shows that finding to be plainly wrong.

The record also supports the trial court's determination that A.H.'s testimony was credible. She testified in detail about the way that Contreras seized her, locked her in his car, and raped her. She specifically identified the dark location at a nearby apartment complex where the assault occurred. She immediately reported the assault to a friend and, about two weeks later, told police. A.H.'s mother testified that she found out what happened when Sabina's mother told her and that A.H. was visibly "shaken" and "afraid" when talking about it. Officer Meth likewise testified that A.H. was "upset" and "crying" when he spoke to her.

In judging witness credibility, the trial court was free to reject Contreras's self-serving testimony. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). Contreras admitted that he did not know A.H. and that he met her hoping to have sex. Although he claims he decided against having sex with her when he learned her age, he could not recall what she said about her age because it "didn't seem important." Contreras also provided conflicting statements

- 6 -

to the police about whether he left the apartment complex with A.H.  For all those reasons, the trial court could reasonably conclude that Contreras lied to conceal his guilt.  *Id.*

We find no merit in Contreras's claim that A.H.'s credibility was brought into question because she could not remember whether she called Sabina before or after she showered.  Even assuming that weak criticism of her testimony qualifies as impeachment, impeachment alone "does not necessarily render the testimony inherently incredible."  *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022).

We likewise reject Contreras's invitation to reject A.H.'s testimony for lack of corroboration.  "[A] conviction for rape and other sexual offenses may be sustained *solely* upon the uncorroborated testimony of the victim."  *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005) (emphasis added).  "There is no requirement of corroboration."  *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984).  "[B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished."  *Poole v. Commonwealth*, 73 Va. App. 357, 369 (2021) (quoting *Wilson*, 46 Va. App. at 88).

Finally, we reject Contreras's argument that Officer Craighill misinterpreted Contreras's nodding of his head during his interpreter-facilitated interview as an admission that he had had sex with A.H.  The trial court, as fact finder, was entitled to assess the proper weight to attribute to Craighill's description of Contreras's nonverbal response.

CONCLUSION

In short, the trial court had sufficient evidence to conclude beyond a reasonable doubt that Contreras was guilty of rape and abduction with intent to defile.  Accordingly, we cannot

- 7 -

find that the judgment was "plainly wrong or without evidence to support it." *McGowan*, 72

Va. App. at 521 (quoting *Smith*, 296 Va. at 460).

*Affirmed.*