COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, Athey and Causey

NORMAN ALBERTO GUTIERREZ

MEMORANDUM OPINION*

v.        Record No. 0127-23-4                 PER CURIAM
                                                MARCH 19, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

(Rachel C. Collins, Senior Trial Attorney; Elsa Ohman, Assistant
Public Defender, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Lindsay M. Brooker, Assistant
Attorney General, on brief), for appellee.


Norman Alberto Gutierrez appeals his convictions, following a jury trial, for aggravated

sexual battery and rape, in violation of Code §§ 18.2-67.3, 18.2-61.  Gutierrez asserts that the

evidence is insufficient to support his convictions.  He further contends that the trial court erred

when it granted the jury's request to rehear a portion of the Commonwealth's evidence.  After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

For the following reasons, we disagree and affirm the convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

C.G. was born in Honduras on May 23, 2003, and lived there with her mother and three siblings until 2019. Her father, Gutierrez, left Honduras for the United States several months after C.G. was born and rarely contacted her. When C.G. was fifteen, she was sexually assaulted. Consequently, in May 2019, C.G. moved to Arlington, Virginia, to live with Gutierrez, her stepmother, and three younger half-siblings.

Several months after C.G.'s arrival in the United States, C.G.'s mother became ill, and C.G. asked Gutierrez for money to send to her mother in Honduras. Gutierrez responded that "nothing was free here." C.G. perceived Gutierrez's statement to mean "[t]hat [Gutierrez] wouldn't give [her] anything without something in exchange."

Several days after Gutierrez's comment, C.G. was asleep in the small bedroom she shared with S.G., one of the younger children. She woke in the early morning hours to Gutierrez standing over her. Gutierrez reached under C.G.'s shirt and began to fondle her breasts. He then reached under C.G.'s shorts and pushed on the top of her vagina. C.G. told Gutierrez "no" and began to cry, but Gutierrez continued to touch her. When the touching ceased, Gutierrez left $50 for C.G.

A few days later, C.G. again woke to Gutierrez standing over her. Gutierrez touched her breasts and also inserted his fingers into her vagina. When the touching ceased, Gutierrez left another $50 for C.G.

Gutierrez entered C.G.'s room while she slept for a third time several days after the second incident of abuse. Once again, Gutierrez fondled C.G.'s breasts and touched her vagina. This time,

---

[1] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

however, Gutierrez removed C.G.'s shorts, got on top of her, and inserted his penis into her vagina. C.G. told Gutierrez to stop, but he persisted until he ejaculated on top of her vagina. After he finished, Gutierrez left $50 for C.G.

C.G. testified that she did not disclose the abuse to anyone "[b]ecause [Gutierrez] told [her] . . . that [she] didn't have anyone [in the United States;] that nobody would believe [her]." C.G. did not know what to do because she had just arrived in the United States. C.G. wired the money that Gutierrez gave her to her mother. C.G. could not remember the date of each of the incidents but noted that she had been in the United States for several months when the abuse occurred and that S.G. had returned to school, yet it was still warm outside.

C.G. testified that after the incidents, Gutierrez came into the kitchen while she was cooking and asked C.G. to forgive him. Thereafter, C.G. became depressed and started to self-harm. Consequently, she began to see a therapist. In early 2021, C.G. divulged the incidents with Gutierrez to a school counselor.

After telling the counselor, C.G. messaged Gutierrez via "WhatsApp" on March 29, 2021. Without objection, the Commonwealth entered screenshots of the conversation into evidence. Because the messages were in Spanish, the court interpreter orally translated the messages, without objection, for the jury.

> [C.G.:] I want to ask you about a question and I want you to answer me honestly.
>
> Gutierrez[:] [D]epends. Tell me.
>
> [C.G.:] [T]ruth, you never loved me.
>
> Gutierrez[:] [W]hy do you say that, daughter? [I]f that were true, I wouldn't have sent for you.
>
> [C.G.:] I know. [D]ad, I never would've asked. I can't take this because why did you do that to me.

Gutierrez[:]  [D]aughter, I don't even know why I did that.  And hope someday you will forgive me.  I know you will never forgive me that, but the truth is I'm very sorry my daughter.

[C.G.:]  [Y]ou know that they changed me.  That's why I'm like this.  And I swear there's not one day that I don't think about it.

Gutierrez[:]  [B]ut I love you, daughter.  Forgive me.

[C.G.:]  I will be truthful.  I'm never going to forgive you, two emojis . . . .  [A]nd I will be honest, I'm never going to forgive you.

Gutierrez[:]  I have seen that.

[C.G.:]  [T]here's not a day that goes by that I don't suffer because of that.  [Y]ou were wrong, father, for penetrating me.  That's not allowed.

Gutierrez[:]  [H]onestly I'm telling you I love you as a daughter.  I never wanted to hurt you, my daughter.  The truth is I don't know how I could do that.

[C.G.:]  [O]n top of that, you took advantage of me when I asked you for money.

Gutierrez[:]  I don't know what to tell you, daughter.  The truth is God may take my life it would be better and you would be better.

[C.G.:]  I don't want anyone to not believe me.  But believe me, that hurt me a lot and I will never forget it.

Gutierrez[:]  [I]s it true that you told that to Diana?[2]

[C.G.:]  [Y]es, I told her.  I wanted to tell someone.

Gutierrez[:]  I imagine that.

[C.G.:]  [U]h-huh.

Gutierrez[:]  [Y]ou know that's a big . . . problem.

[C.G.:]  I know but I won't tell anyone else.

Gutierrez[:]  [W]e'll see.  [B]ut it's okay.  I deserve it.

---

[2] C.G. explained that Diana was the daughter of one of Gutierrez's cousins.

[C.G.:] [D]addy, I don't know what to [s]ay. Just that I will never forgive you. I love you and everything, but I [am] never going to forget what you did to me.

Gutierrez[:] [D]on't worry. Whatever happens will happen. That's the truth. But if you want . . . if you want, maybe you can tell the police because I already told Diana and it's, like, already out there. And very quickly the papers will come to her.

[C.G.:] [Y]ou know I don't want that.

Gutierrez[:] [W]ell, you know what you want.

[C.G.:] [Y]es.

Gutierrez[:] [S]o one question, what are you thinking of doing, daughter?

[C.G.:] [W]hy?

Gutierrez[:] I'm just asking.

[C.G.:] [N]othing.

Gutierrez[:] [J]ust because I'm wondering and you told Diana. That's why.

[C.G.:] [N]o, nothing. It's just I couldn't carry it around with me anymore. And it's, like, as if nothing happened.

Gutierrez[:] [B]ut if you want me to pay, go for it.

[C.G.:] [W]hat do you think?

Gutierrez[:] I think so. I've seen how you've been making my life impossible.

[C.G.:] [H]ow so?

Gutierrez[:] [I]n many ways.

[C.G.:] [Y]ou know if you regretted anything, you would do something to make it better. If I wanted to make life impossible for you, I would've done something.

Gutierrez[:] [A]nd what else do you want me to do? I've been behaving well.

[C.G.:] [Y]ou're mistaken, dad. I have realized a lot of things that you've been saying behind my back.

Gutierrez[:]  I've never said anything bad.  I just tell the truth.  And now you have your husband to take responsibility for you and your daughter.  When a person gets married or gets with somebody, everything changes, daughter.  That's the only thing I'll say.

[C.G.:]  I know, but you as my dad also have a right to support me.

Gutierrez[:]  [Y]esterday I said that's what you have a husband for.  And I said that knowing Diana would say that.  Of course I have to support you, but not everything can come from my account.  That's why I left Evelyn, so I can help when I'm able to.

[C.G.:]  [Y]ou say things that hurt me.

Gutierrez[:]  [B]ut now your husband has to take responsibility, daughter, for your things.

[C.G.:]  [A]s long as -- not as long as I'm under age, dad.

Gutierrez[:]  I'm not trying to make you feel bad, daughter.  It's just the reality.  But daughter, I thought you didn't have to be under age to have a husband.  That's not how that goes.

[C.G.:]  [T]hat's why I turned to the streets.

Gutierrez[:]  I did that, daughter.

[C.G.:]  [N]o, father.  You are mistaken.  [D]o you know what hurt me most knowing that I was out there and you did that to me?  You don't know anything about my life and have just made me suffer.

Gutierrez[:]  [B]ut now you have a little angel on your side, daughter.  I know it's not easy, but look at that beautiful thing.

[C.G.:]  [Y]ou know what?  Because of her, I now have the strength to move forward.

Gutierrez[:]  [O]f course.  You have her and Melvin.[3]

[C.G.:]  I know I was an inconvenience for you and your family.  I have seen that many ways.

Gutierrez[:]  [T]hat's just in your head.

[C.G.:]  I don't have anyone here, just my daughter.

---

[3] C.G. explained that after Gutierrez assaulted her she became pregnant with her now husband's, Melvin's, child.

- 6 -

Gutierrez[:]  And Melvin.

[C.G.:]  [B]ut I am going to make an effort to better myself.

Gutierrez[:]  [T]hat's what I was hoping you'd been thinking since you came, daughter.

[C.G.:]  I came with that thought.  But because of you, everything in my life changed.

Gutierrez[:]  [W]ell, look, if I were like other fathers, they even charge for the money for the travel when they come.

[C.G.:]  I know.  [T]hat's the only thing that was missing.

Gutierrez[:]  [D]on't say that.

[C.G.:]  [D]on't worry.  When I get a job, I'll pay that if you want.

Gutierrez[:]  [O]h, God.

[C.G.:]  I should've never come.

Gutierrez[:]  I said for you to clearly.

[C.G.:]  [T]hat's why I told my mom why didn't she stop me.  I wouldn't have come if it was for her because I was poor but happy there.

Gutierrez[:]  [T]hat's right, my daughter.

[C.G.:]  [Y]es.

Gutierrez[:]  [T]he truth is I regret what I did.  I swear.  You can do what you want.  That is your right.

     . . . .

Gutierrez[:]  [T]he only thing I will say is that from today on, I will not be the same.  I didn't think you would keep that and now you ruined me by saying that to Diana.

[C.G.:]  [Y]ou know, in spite of everything, Diana is the one who has always listened to me.

Gutierrez[:]  [Y]eah.  Maybe Diana will be with you for your whole life.

[C.G.:]  I don't know.  But it doesn't matter when I have my daughter.  That's the most important thing in my life.

Gutierrez[:] [T]hat's true. Okay. Go ahead. I'm getting tired of talking about this.

[C.G.:] I'm sorry, but I couldn't take it anymore with all of this going on as if nothing happened.

Gutierrez[:] [Y]eah, well, I'm telling you if what you want is to see me suffer. That's why I have moved away from all of those women.

[C.G.:] [D]on't lie, dad.

Gutierrez[:] [T]hat's the truth. Believe me.

[C.G.:] [Y]ou know you need to look for help. If not for me, for the girls.

Gutierrez[:] [O]kay.

[C.G.:] [O]kay.

Gutierrez[:] [T]hanks for all this craziness.

[C.G.:] [I]t's not that. But what you have done is not normal and I'm seriously telling you to look for help.

Gutierrez[:] [A]nd how have I been then according to you? Just because I did that with you, you think I'm sick? God. You think I don't realize when they [go to] S[.G.] to ask her questions. Don't be mistaken. Ask if you want. I never asked her anything. You think I'm stupid, daughter. And if they take me away, I'll play like I didn't know.

Gutierrez[:] S[.G.] tells me everything, [a cut and pasted message from Gutierrez's account]. You think I don't know.

[C.G.:] [Y]ou know, the only thing I asked was that she trust me and that if anything happened to her that she'd tell me.

Gutierrez[:] [P]oor little girl. You think that I'm so sick.

[C.G.:] [T]he devil is the devil.

Gutierrez[:] [Y]ou're mistaken, my daughter.

[C.G.:] I know with them everything is different. You're watching them grow whereas I was a stranger to you.

Gutierrez[:] [I]f that happened with you, it's because you look like your mom. And it's something I will regret my whole life.

[C.G.:] [B]ut that doesn't justify it.

Gutierrez[:] [O]f course it doesn't justify it.

[C.G.:] [O]kay.

Gutierrez[:] I'm your father, daughter. I love you. Understand. I know that I took advantage in that way. But it is my only sin that will never be forgiven.

C.G. noted that at the time of this conversation, she was seventeen years old and still living with Gutierrez.

When C.G. was asked at trial what she meant when she messaged Gutierrez "that's the reason that [she's] like this," C.G. asserted that she was referring to what Gutierrez had done to her. C.G. further admitted that she never told her mother, stepmother, or any of her siblings what Gutierrez had done because Gutierrez told her no one would believe her.

Detective Fernando Gomez of the Arlington County Police Department arrested Gutierrez on April 7, 2021, and thereafter conducted a recorded interview with Gutierrez in Spanish.[4] Without objection the interview was entered into the record and played for the jury in its entirety. While the interview was played, Detective Gomez, without objection, explained what he and Gutierrez were discussing. Detective Gomez explained to Gutierrez that C.G. had accused him of entering her bedroom in the early morning hours on several occasions to fondle her breasts and touch her vagina in 2019. On a third occasion, C.G. claimed that Gutierrez raped her.

Detective Gomez testified that when he confronted Gutierrez about the alleged assault and rape, Gutierrez denied that he inappropriately touched C.G. and asserted that she was lying. He stated that he went into her room early in the morning before work and kissed her. Gutierrez indicated that C.G. was raped in Honduras so she was likely talking about that when she talked with

---

[4] Detective Gomez noted that he had learned Spanish in high school and had been a certified Spanish interpreter in Arlington County since the mid-2000s.

Detective Gomez. Concerning the text messages, Gutierrez claimed that he and C.G. were discussing his departure from Honduras without her when she was a baby.

Detective Gomez testified that after he confronted Gutierrez with the content of the March 29 WhatsApp conversation, Gutierrez admitted that he sexually touched C.G.[5] Gutierrez explained that during 2019 he was an alcoholic and often drank before work. In the morning before leaving for work, he would go into the children's bedrooms to hug and kiss each of them. However, he admitted that twice he entered C.G. and S.G.'s room and touched C.G.'s breasts and her vagina over her clothes. He further admitted that in the text message exchange on March 29, he was asking for C.G.'s forgiveness for touching her vagina. Gutierrez denied penetrating C.G. or touching his other children inappropriately.

After closing argument from counsel, the jury retired to deliberate. The record indicates that after a short recess the jury returned with a question for the trial court. The jury asked, "[C]an we have the court translator come in and read the text messages aloud re: the use of the word penetration?" After reading the question aloud, the trial court took a recess to research the matter. Upon return to open court, the trial court proposed replaying part or all of the oral translation of the messages from the court reporter's recording.

Gutierrez objected. He noted that the Commonwealth could have introduced an English transcription of the messages into evidence, but it did not. Consequently, he argued, the Commonwealth could not now add evidence into the record or clarify an exhibit because the case had been submitted to the jury. Instead, he asserted, it was the jury's collective memory that should hold. Gutierrez further asserted that replaying the oral translation would unduly emphasize the text

_____

[5] Detective Gomez testified that he only "confronted [Gutierrez] with the content of the messages, not [the text messages] word for word."

messages. Finally, Gutierrez noted that the jury had not asked for the entire text message exchange, but only the narrow portion concerning penetration.

The trial court acknowledged the jury's narrow request but asserted that it was not going to engage in a "back-and-forth" exchange with the jury concerning what parts of the translation it wished to hear. The trial court found that the replaying of the oral translation was not additional evidence which would require the court to reopen the case, nor was the oral translation the interpreter's testimony. Rather, the oral translation related to an exhibit already in evidence. The court noted that Gutierrez had not objected to the admission of the text messages into evidence or to the oral interpretation of those messages during trial. The trial court determined that it would allow the jury to rehear the oral translation of the entire text message exchange.

The trial court brought the jury into the courtroom and explained that it could not allow the interpreter to return and reinterpret the text messages. The court, however, would allow the jury to rehear the oral translation that it heard during trial. The jury foreman stated that would be "very helpful." The trial court then explained that "[i]n [its] estimation, it would . . . be best, so we don't pull anything out of context, just play the whole translation of all of the text messages." The 16-minute oral translation was replayed for the jury, then it retired for further deliberation.

The jury convicted Gutierrez of both charges, and the trial court sentenced him to 60 years of incarceration, with 42 years suspended. Gutierrez appeals.

ANALYSIS

I. Sufficiency of the Evidence

Gutierrez asserts that C.G.'s testimony was inherently incredible, thus the evidence was insufficient to support his convictions. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521

(2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

A person commits aggravated sexual battery if he "sexually abuses the complaining witness, and [t]he offense is committed by a parent, step-parent, grandparent, or step-grandparent and the complaining witness is at least 13 but less than 18 years of age." Code § 18.2-67.3(A)(3). "Sexual abuse is defined in pertinent part as 'an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." *Nelson v. Commonwealth*, 73 Va. App. 617, 623 (2021) (alterations in original); *see* Code § 18.2-67.10(6)(a). A person is guilty of rape if he "has sexual intercourse with a complaining witness . . . against the complaining witness's will, by force, threat or intimidation . . . ." Code § 18.2-61.

Gutierrez points to several uncorroborated claims in C.G.'s testimony. He notes that C.G. failed to report the incidents for two years and only did so upon learning she could receive legal immigration status as a crime victim. Thus, he asserts, C.G. had a motive to lie. Although C.G. claims Gutierrez ejaculated on her body, no physical evidence was ever presented. In fact, C.G. destroyed that potential evidence when she washed herself and her clothes after the incident.

- 12 -

Moreover, the Commonwealth failed to provide receipts of the alleged transfers C.G. made to her mother in Honduras using the money he allegedly gave her after these encounters. Thus, he argues, the evidence was insufficient to support his convictions.

In finding Gutierrez guilty, however, the jury accepted C.G.'s testimony and rejected his claim of innocence. "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Moreover, "the conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)).

"A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

At trial, C.G. testified that she was 16 years old when she left Honduras and traveled to the United States to live with Gutierrez in Arlington, Virginia. After several months in Virginia,

- 13 -

C.G.'s mother became ill and C.G. asked Gutierrez for money to send to her mother. Gutierrez stated that "nothing was free here." Several days later, C.G. woke in the morning to find Gutierrez in the bedroom she shared with S.G. Gutierrez stood over her and touched her breasts and her vagina. C.G. told Gutierrez to stop but he persisted. A few days after the first incident, C.G. awoke again to Gutierrez standing over her fondling her breasts. This time Gutierrez inserted his fingers into her vagina. Days later, C.G. awoke to find that Gutierrez had pulled C.G.'s shorts down, laid on top of her, and inserted his penis into her vagina. C.G. told Gutierrez to stop but he persisted. Eventually, Gutierrez ejaculated on top of C.G.'s vagina. After each incident of abuse, Gutierrez left $50 for C.G.

Gutierrez notes that there were no witnesses to the abuse and no physical evidence to corroborate the child's account. It is well established, however, that convictions for "sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)); *see also Nobrega v. Commonwealth*, 271 Va. 508, 519 (2006) (same). "[B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Id.* at 369 (quoting *Wilson*, 46 Va. App. at 88).

Nonetheless, Gutierrez partially corroborated C.G.'s testimony during the interview with Detective Gomez. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (finding that witness's testimony, which was partially corroborated by defendant's statement, was not inherently incredible). Gutierrez admitted that on two separate occasions he entered the room C.G. shared with S.G. in the morning and touched C.G.'s breasts and vagina. Gutierrez also admitted that during the March 29, 2021 text exchange he and C.G. were discussing the sexual incidents that took place in 2019. In the text messages themselves, Gutierrez asserted that the

- 14 -

incidents occurred "because [C.G.] look[ed] like [he]r mom. And it's something [Gutierrez] will regret [his] whole life."

Gutierrez points to C.G.'s delayed report of the abuse as a circumstance rendering her testimony incredible as a matter of law. The abuse occurred in 2019, and she did not report it until 2021. Our cases recognize that a "victim's youth, fright[,] and embarrassment certainly provide[ ] the jury with an acceptable explanation for [delayed reporting of sexual assault]." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991). *See also Wilson*, 46 Va. App. at 88 (holding that 12-year-old victim's delayed report due to her fear of the defendant and "shame and embarrassment at what was happening to her" was consistent with human experience); *Love v. Commonwealth*, 18 Va. App. 84 (1994) (holding that 13-year-old victim's 7-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible). C.G. explained that she did not immediately report the abuse because Gutierrez told her she was basically alone in the United States and that no one would believe her. The jury could have found her delayed report reasonable under all the circumstances. *Corvin*, 13 Va. App. at 299.

Any inconsistencies in C.G.'s statements elicited during her cross-examination or during other witnesses' testimony were put before the jury for its consideration. *See Kelley*, 69 Va. App. at 626 ("[A]s Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." (second alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011))). In exercising its role as the factfinder, the jury weighed the evidence and resolved any inconsistencies in favor of the Commonwealth. In doing so, the jury necessarily rejected Gutierrez's theory of innocence and found C.G. credible. In sum, C.G.'s testimony was not "so manifestly false that reasonable men ought not to believe it[.]" *See Juniper*, 271 Va. at 415.

- 15 -

C.G. was 16 years old when her father, Gutierrez, entered her room in the morning and fondled her breasts and vagina under her clothes. Several days later, Gutierrez entered C.G.'s room, fondled her breasts under her shirt, and inserted his fingers into her vagina. Days later, Gutierrez entered C.G.'s room for the third time, removed C.G.'s shorts, laid on top of her, and inserted his penis into her vagina. Considering these facts and circumstances, a reasonable factfinder could conclude beyond a reasonable doubt that Gutierrez sexually abused and raped C.G.[6]

## II. Response to Jury Request During Deliberations

Gutierrez asserts that the trial court erred when it granted the jury's request to rehear the oral translation of the WhatsApp messages. He asserts that "the interpretation of the WhatsApp messages by the interpreter was improper as it did in fact place undue emphasis on only a part of the evidence presented at trial." He notes that the jury specifically requested that the "court translator come in and read the text messages aloud re: the use of the word penetration." Because the request was so specific, he argues, "allowing the jury to rehear any part of the testimony would put undue emphasis on the part of the testimony reheard."

Alternatively, Gutierrez argues that the trial court should have "required the jury to rehear the entirety of the testimony of the witness [during whose testimony] the WhatsApp messages were introduced, including the cross-examination of that witness." He notes that the court interpreter was not the witness providing testimony, rather, the court interpreter was the vehicle through which the

---

[6] Gutierrez also contends that there is no expert translation of the statements he made in the WhatsApp messages or while being interrogated by Detective Gomez. However, Gutierrez did not object to the introduction of the WhatsApp messages into evidence or to the court interpreter's oral interpretation of those messages. Nor did Gutierrez object to the introduction of the interview with Detective Gomez or to the manner the interview was presented to the jury. Gutierrez failed to preserve these issues for appellate review and cannot raise these objections for the first time on appeal. *See* Rule 5A:18 (stating that an objection must be "stated with reasonable certainty at the time of the ruling"). Consequently, we consider these arguments waived and do not consider them.

messages were interpreted into a language the jury could understand. To have the jury hear only a narrow portion of C.G.'s testimony, he asserts, violated his due process rights.

"Whether a jury, after retirement, may, upon their request have a particular portion of the evidence read to them is ordinarily a matter resting in the sound discretion of the trial court." *Kennedy v. Commonwealth*, 18 Va. App. 543, 547 (1994) (quoting 11B Michie's Jurisprudence *Jury* § 57 (1986)). Relevant circumstances to consider include "the threat of 'unbalanced testimonial emphasis,' the length of the testimony in issue, the time already consumed in jury deliberation, the complexity of the trial and related issues, and the nature and specificity of the evidence subject of the testimony." *Id.* at 548 (quoting *United States v. Pimental*, 645 F.2d 85, 87 (1st Cir. 1981)) (other citations omitted). Furthermore, "the probative value and benefit of the testimony in issue to the fact finding process must always be weighed against its prejudicial effect to the accused, if any." *Id.*

In *Kennedy*, we "caution[ed] that the practice [of rereading requested testimony to a jury] is appropriate only [in] limited circumstances and should be carefully undertaken by trial courts on a case-by-case basis." *Id.* Further, we noted that the articulated factors were not exhaustive, as "[i]t would be difficult to catalog all factors pertinent to a resolution of such jury requests or to enunciate a bright line test suitable to every instance." *Id.* On balance, "[a] court may not 'simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses.'" *Id.* (quoting *People v. Howe*, 221 N.W.2d 350, 352 (Mich. 1974)). "If there is any emphasis being placed on the evidence, it is being placed there by the jury." *Id.* (quoting *State v. Jenkins*, 845 S.W.2d 787, 792 (Tenn. Crim. App. 1992)).

Here, the testimony of interest to the jury was specifically identified and relevant to a factual matter at the heart of the case. While the trial court considered the jury's request, the jury continued deliberations. After discussing the request with counsel, the trial court informed the jury that it

would not allow the court interpreter to enter the jury deliberation room and reinterpret the text messages. The court offered, however, to instruct the court reporter to replay the original oral interpretation of all the text messages. The jury foreman indicated that would be "very helpful." The court informed the jury that it would replay all the text messages so that no message would be taken out of context. The oral translation replayed for the jury was neither lengthy nor complex as it was only 16 minutes of a 2-day trial.

Considering all the facts and circumstances, we conclude that the trial court's response to the jury's request during deliberations represented a reasonable exercise of discretion. Thus, there was no reversible error in the trial court's decision to have the oral translation of the text messages replayed at the jury's request.

## CONCLUSION

We hold that the evidence was sufficient to sustain Gutierrez's convictions of aggravated sexual battery and rape. Further, we conclude that the trial court did not abuse its discretion in replaying the translation of the WhatsApp messages between Gutierrez and his victim.

*Affirmed.*